2007 ME 141

Andrew S. NICHOLSON

v.

BOARD OF LICENSURE
IN MEDICINE.

Supreme Judicial Court of Maine.

Argued: Sept. 10, 2007.
Decided: Nov. 6, 2007.

Bruce Merrill (orally), Portland, for appellant.

Dennis Smith, Asst. Atty. Gen. (orally), Augusta, for appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, SILVER, and MEAD, JJ.

CLIFFORD, J.

[¶ 1] Andrew S. Nicholson appeals from a judgment of the Superior Court (Kennebec County, *Marden, J.*) dismissing his petition, filed pursuant to M.R. Civ. P. 80C, for review of the decision of the Board of Licensure in Medicine denying his motion to alter and amend the terms of a consent agreement entered into by the Board and Nicholson. Nicholson contends that the court erred in upholding the Board's decision. We affirm the judgment.

## I. BACKGROUND

[¶ 2] We consider all the facts in Nicholson's complaint as if admitted by the Board. *See Saunders v. Tisher,* 2006 ME 94, ¶ 8, 902 A.2d 830, 832. Nicholson has been a licensed Maine physician since 2000. In 2002, Nicholson voluntarily reported to the Board that he had ordered child pornography from a "sting" website operated by the United States Postal Service. The Board issued a complaint of

incompetence against Nicholson and ordered him to obtain psychological counseling.[1] *See* 32 M.R.S. § 3282–A(2)(E)(1) (2006).

[¶ 3] In January of 2003, Nicholson and the Board entered into a consent agreement containing the following pertinent terms:

In lieu of proceeding to an adjudicatory hearing and in order to resolve the outstanding complaint, the Licensee and the Board agree to the following discipline:

1. The Licensee will restrict his practice of medicine to adults over 18 years of age.

2. The Licensee will participate in ongoing treatment with a therapist, approved by the Board, with experience in the treatment of sexual offenses. The therapist will provide the Board with quarterly reports that indicate whether the Licensee is attending his therapeutic sessions. If for any reason, the therapist and the Licensee are unable to form a mutually satisfactory therapeutic relationship, the Licensee may petition the Board to continue therapy with another therapist who must be approved by the Board.

3. The Licensee will be on probation and the Board will order a reevaluation of the Licensee after one year from the effective date of this Agreement. Following the one year reevaluation, the restrictions and conditions set forth in this Agreement may be modified, continued or terminated in the sole discretion of the Board. If there is a repeat offense, the Board shall revoke the Licensee's license.

. . . .

5. The Licensee waives any further hearings or appeals regarding the matter which is the subject of this Consent Agreement. He agrees that this Consent Agreement is a final order resolving all matters pending before the Board.

As a result of the consent agreement, the American Board of Family Medicine rescinded Nicholson's specialty status in family practice based on its policy that there can be no limitations on a family practitioner's license.

[¶ 4] Nicholson commenced treatment with a Board-approved therapist, who reported to the Board that Nicholson presents minimal risk to others. In 2004, and again in 2005, the Board reevaluated Nicholson without a hearing, and decided to maintain the same consent agreement terms. In June of 2006, the Board denied Nicholson's specific request to have the restrictions on his license lifted.

[¶ 5] Pursuant to M.R. Civ. P. 80C, Nicholson filed a petition in the Superior Court for review of the Board's June 2006 decision. The Board moved to dismiss Nicholson's complaint, arguing that the court lacked jurisdiction to modify or vacate the consent agreement pursuant to 10 M.R.S. § 8003(5)(B) (2006). The Superior Court granted the Board's motion to dismiss Nicholson's complaint. In doing so, the court agreed with Nicholson that the Board was required by statute to fix the period of Nicholson's probation, that the consent agreement did fix a one-year probationary period, and that the one-year term of probation had expired. Nevertheless, the court concluded, the age limitation on Nicholson's patients constituted a

---

1. The Board is authorized to suspend, revoke, modify, or restrict a license on the ground of incompetence if the licensee has "[e]ngaged in conduct that evidences a lack of ability or fitness to discharge the duty owed by the licensee to a client or patient or the general public." 32 M.R.S. § 3282–A(2)(E)(1)(2006).

separate and distinct restriction on his license, which was not subject to the one-year fixed term of probation, and that, pursuant to both the consent agreement and relevant statutory provisions, it was within the Board's sole discretion to modify, continue, or terminate the restriction. Nicholson then filed this appeal from the dismissal of his petition.

## II. DISCUSSION

[¶ 6] As an initial matter, we note that although the court incorrectly styled its decision as one dismissing Nicholson's complaint for lack of jurisdiction, the decision analyzing the consent agreement clearly indicates that the court actually addressed and decided the matter on the merits, based on the terms and conditions of that agreement. Accordingly, we interpret the Superior Court's decision as affirming the Board's June 2006 decision to deny Nicholson's motion to amend the consent agreement and remove its restrictions on his license.[2]

[¶ 7] "When the Superior Court acts in an intermediate appellate capacity to review an administrative agency's decision pursuant to M.R. Civ. P. 80C, we directly review the agency's decision for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *FPL Energy Me. Hydro LLC v. Dep't of Envtl. Prot.*, 2007 ME 97, ¶ 13, 926 A.2d 1197, 1201 (quotation marks omitted).

[¶ 8] Nicholson and the Board executed the consent agreement pursuant to 32 M.R.S. § 3282–A, which authorizes the Board to enter into such an agreement with a licensee in lieu of pursuing disciplinary action against the licensee:

> With the consent of the licensee, the board may enter into a consent agreement that fixes the period and terms of probation best adapted to protect the public health and safety and rehabilitate or educate the licensee. A consent agreement may be used to terminate a complaint investigation, if entered into by the board, the licensee and the Attorney General's office.

32 M.R.S. § 3282–A(*l*)(A) (2006). Similarly, the Department of Professional and Financial Regulation statute, applicable to the Board of Licensure in Medicine pursuant to 10 M.R.S. § 8001–A(4) (2006), allows the Board to enter into a consent agreement to resolve a matter with a licensee without any further proceedings if agreed to by the licensee, the Board, and the Attorney General. 10 M.R.S. § 8003(5)(B) (2006). It also limits the ability of the licensee to seek review of the consent agreement:

> The bureau, office, board or commission may execute a consent agreement that resolves a complaint or investigation without further proceedings. Consent agreements may be entered into only with the consent of: the applicant, licensee or registrant; the bureau, office, board or commission; and the Department of the Attorney General. Any remedy, penalty or fine that is otherwise available by law, even if only in the jurisdiction of the Superior Court, may be achieved by consent agreement, including long-term suspension and permanent revocation of a professional or occupational license or registration. *A consent agreement is not subject to re-*

---

**2.** The court correctly analyzed the merits of Nicholson's complaint, although it should not have undertaken the analysis at such an early stage in the proceedings. Nevertheless, because the underlying facts are both complete and undisputed, we review the court's judgment as we would had the court properly considered the merits of the underlying decision at a summary judgment phase of the proceedings.

*view or appeal, and may be modified only by a writing executed by all parties to the original consent agreement.* A consent agreement is enforceable by an action in Superior Court.

10 M.R.S. § 8003(5)(B) (emphasis added). Indeed, the consent agreement itself explicitly states that "[t]he licensee waives any further hearings or appeals regarding the matter which is the subject of this Consent Agreement."

[¶ 9] There is no dispute that the Board was vested with the authority to enter into the 2003 consent agreement with Nicholson, and that neither the terms of that agreement nor the manner in which it was executed have ever been appealed. The consent agreement unambiguously provides that the decision to modify, continue, or terminate any and all provisions of the consent agreement lies in the sole discretion of the Board. Given such discretion on the part of the Board, and the fact that this discretion was never challenged at the time of execution of the consent agreement in 2003, we cannot say that the Board acted beyond its discretion when it declined Nicholson's request to modify the terms of the consent agreement.

The entry is:

Judgment affirmed.