2009 ME 24

**Donald J. BEAUCHENE**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Argued: Jan. 13, 2009.

Decided: March 10, 2009.

Daniel I. Billings, Esq. (orally), Marden, Dubord, Bernier & Stevens, Waterville, ME, for Donald Beauchene.

G. Steven Rowe, Attorney General, Katherine Greason, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, ME, for the Maine Department of Health and Human Services.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1] Donald J. Beauchene appeals from a judgment of the Superior Court (Kennebec County, *Jabar, J.*) affirming the decision of the Commissioner of the Department of Health and Human Services to deny the grievance Beauchene filed with the Department. Beauchene's grievance is based on his claim that his Comprehensive Service Plan (CSP) does not comply with the requirements of the Rights of Recipients of Mental Health Services (RRMHS). *See* 13 C.M.R. 14 193 001 (2004). Beauchene contends that the Riverview Psychiatric Center's (the hospital) decision to withdraw its authorization of Beauchene's supervised community visits is a limitation on his liberty that is required to be addressed in his CSP, that the limitation is not addressed in his CSP, and that the hospital's failure to address the limitation infringes upon his rights pursuant to the RRMHS. We disagree and affirm the judgment of the Superior Court.

## I. BACKGROUND

[¶ 2] In 1970, following a jury determination that Beauchene was "not guilty by reason of mental disease or defect" of the crime of murder, pursuant to 15 M.R.S.A. § 103 (1964),[1] Beauchene was ordered to be placed under the care and custody of the Commissioner of what is now the Department of Health and Human Services. He was placed at the Augusta Mental Health Institute, and later Riverview in Augusta. Beauchene escaped from the institution twice, and committed a rape in the State of New York after his second escape. Beauchene was convicted of that rape and was incarcerated for fifteen years in New York before being returned to Riverview in 1998.

[¶ 3] In 2001, the Superior Court approved Beauchene's request for modified release treatment pursuant to 15 M.R.S.A. § 104–A(2) (Supp.2000),[2] which, with the hospital's approval, permitted Beauchene to visit his parents in their home with supervision. The hospital authorized these community visits until the fall of 2004, at which time the Superintendent withdrew the authorization based on a recommendation from Beauchene's psychiatrist, and the accusations against Beauchene by two hospital patients of improper sexual comments or conduct. No charges were filed against Beauchene, but because of his history of escaping from the hospital, the Superintendent was concerned that "the

---

1. Title 15 M.R.S.A. § 103 (1964) provides that "when a respondent is acquitted by reason of mental disease or mental defect excluding responsibility, ... the court shall order such person committed to the custody of the Commissioner of Mental Health and Corrections to be placed in an appropriate institution for the mentally ill or the mentally retarded for care and treatment." Title 15 M.R.S.A. § 103 has since been amended, most recently by P.L.2005, ch. 263, § 1 (effective May 31, 2005) (codified at 15 M.R.S. § 103 (2008)).

2. Title 15 M.R.S.A. § 104–A(2) (Supp.2000) permits patients hospitalized pursuant to section 103 to petition the Superior Court for a release treatment program "allowing the individual to be off institutional grounds for a period of time, not to exceed 14 days at any one time." Title 15 M.R.S.A. § 104–A(2) has since been amended, most recently by P.L. 2005, ch. 263, § 3 (effective May 31, 2005) (codified at 15 M.R.S. § 104–A(2) (2008)).

accusations might trigger an [escape] if the opportunity presented itself."

[¶ 4] In 2006, Beauchene filed a grievance with the Department contending that the hospital's withdrawal of its authorization of his community visits violates his constitutional and federal civil rights. The Commissioner ultimately denied the grievance. Beauchene appealed the denial of the grievance to the Superior Court, which upheld the Commissioner's decision, concluding that "the treatment modalities and degree of independence and freedom allowed to [Beauchene] are privileges given within the context of his individual treatment and are not constitutionally protected rights." *Beauchene v. Dep't of Health and Human Servs.*, 2006 Me.Super, 2006 WL 1669432, LEXIS 71 (Mar. 28, 2006). Beauchene did not appeal the decision of the Superior Court.

[¶ 5] In May of 2007, pursuant to section B(III) of the RRMHS, the hospital compiled a CSP for Beauchene. Beauchene's CSP lists the problems on which he must focus, his long-term goals in dealing with each problem, his short-term goals with target dates, and the types of intervention the hospital staff will use to help Beauchene reach those goals. When Beauchene does not meet his goals, the hospital staff sets new target dates.

[¶ 6] The CSP addresses Beauchene's problem of "[r]estoration of privileges in the community—starting with a trip to see his elderly parents." The CSP provides that, with regard to this particular problem, Beauchene's long-term goal is "[t]o visit his elderly father at his home within the next year," and his short-term goal is to "re-engage in 1:1 therapy to address issues that will reduce risk in the community" by December 15, 2007. The CSP also provides for intervention by the hospital staff in order to encourage the one-on-one therapy sessions, during which Beauchene and the staff will "explore risk fac-

tors, rigid beliefs, increase insight, etc. over the next 2 months."

[¶ 7] In late October of 2007, Beauchene filed a grievance alleging that the hospital violated his rights guaranteed by the RRMHS. The grievance raised seven different issues, including Beauchene's contention that his CSP does not address the limitation on his liberty resulting from the hospital's withdrawal of its authorization of Beauchene's community visits. An administrative hearing was held on December 10, 2007, after which the hearing officer issued a recommended decision in which she concluded that the hospital violated Beauchene's rights pursuant to the RRMHS by not addressing the limitation on his liberty in his CSP. The hearing officer rejected the other six issues raised by Beauchene.

[¶ 8] In her final decision, the Commissioner adopted the hearing officer's factual findings and conclusions with regard to the first six issues of the grievance, but rejected the conclusion that a limitation on Beauchene's liberty has been imposed as a result of the hospital's decision to withdraw its authorization of Beauchene's community visits. The Commissioner concluded that Beauchene has no liberty interest in leaving the hospital "because a court has ordered that he be involuntarily placed into the department's custody pursuant to 15 M.R.S. § 103," and that the issue therefore "need not be addressed in the [CSP]." The Commissioner concluded that "[e]ven if the hospital has exercised its discretion under the court's order to permit community visits in the past, the refusal to permit visits now does not impose any additional limitation on Mr. Beauchene's liberty interests."

[¶ 9] Beauchene appealed the Commissioner's final decision to the Superior Court pursuant to M.R. Civ. P. 80C. The court concluded that Beauchene "failed to

show that the Department of Health and Human Services' decision regarding his grievance should be reversed," that the Commissioner did not "abuse [her] discretion, make an error of law, nor make a decision not supported by substantial evidence," and affirmed the Commissioner. Beauchene then filed this appeal.

## II. DISCUSSION

### A. Whether Beauchene has a Liberty Interest in Community Visits

 [¶ 10] Beauchene argues that because the Superior Court approved his participation in community visits at the hospital's discretion, and the hospital authorized such visits in the past, the hospital's subsequent decision to withdraw that authorization is a limitation on his liberty that must be addressed in his CSP pursuant to section B(III)(H) of the RRMHS.

 [¶ 11] "When the Superior Court acts in an intermediate capacity to review an administrative agency's decision pursuant to M.R. Civ. P. 80C, we directly review the agency's decision for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Nicholson v. Bd. Of Licensure in Med.*, 2007 ME 141, ¶ 7, 935 A.2d 660, 662 (quotation marks omitted). We give considerable deference to the agency's interpretation of its own rules, regulations, and procedures, and will not set aside the agency's findings "unless the rule or regulation plainly compels a contrary result." *Downeast Energy Corp. v. Fund Ins. Review Bd.*, 2000 ME 151, ¶ 13, 756 A.2d 948, 951 (quotation marks omitted). We will not "attempt to second-guess the agency on matters falling within its realm of expertise," *Imagineering, Inc. v. Superintendent of Ins.*, 593 A.2d 1050, 1053 (Me.1991),

and matters involving the rights of recipients of mental health treatment are within the Commissioner's expertise. *Green v. Comm'n of Dep't of Mental Health, Mental Retardation & Substance Abuse Servs.*, 2001 ME 86, ¶ 9, 776 A.2d 612, 615.

[¶ 12] Pursuant to 34–B M.R.S. § 3003(1) (2008),[3] the Department adopted the RRMHS, which applies to "any person over age 18 receiving mental health treatment from any mental health facility, agency or program." *See* 13 C.M.R. 14 193 001–3 § A(II)(M) (2004). The RRMHS provides that "[r]ecipients have the same human, civil and legal rights accorded all citizens." 13 C.M.R. 14 193 001–3 § A(III)(A) (2004). As required by the statute, the RRMHS establishes in each patient the right to have treatment in accordance with an individualized treatment plan (CSP) that sets forth the requirements for treatment and discharge plans. 34–B M.R.S. § 3003(2)(B) (2008); 13 C.M.R. 14 193 001–13 to –14 § B(III) (2004). The RRMHS also provides other rights in inpatient and residential settings, including the right to privacy and humane treatment; the right to informed consent to treatment; the right to freedom of association and communication by mail and telephone, and to visitors; and the right to freedom from unnecessary seclusion and restraint. 13 C.M.R. 14 193 001–12 to 13, –15 to –25 §§ B(II), (V), (VI), (VII) (2004). The regulation further provides that:

### H. Limitations

1. Such a plan must describe any limitation of rights or liberties. Such a limitation shall be based upon professional judgment and may include

---

**3.** Title 34–B M.R.S. § 3003(1) (2008) provides that: "The commissioner shall adopt rules ... for the enhancement and protection of the rights of clients receiving services from the department, from any hospital pursuant to subchapter IV or from any program or facility administered or licensed by the department...."

a determination that the recipient is a danger to him or herself or to others absent such limitation. . . .

2. When any limitation is included, the treatment and discharge plan shall address the specific limitation, and the restriction shall be subject to periodic review. When possible, the limitation shall be time specific.

3. Whenever possible specific treatment shall be developed to address the basis of the limitation.

4. Documentation regarding the limitation shall include documentation as per H.1. through 3. above and shall include specific criteria for removal of the limitation.

13 C.M.R. 14 193 001–14 § B(III)(H) (2004).

[¶ 13] The Commissioner did not err when she determined that the hospital's decision to withdraw its authorization of Beauchene's community visits was not a limitation on Beauchene's liberty that needed to be addressed in his CSP. The Commissioner's conclusion that, because a court ordered Beauchene to be placed in the Commissioner's custody pursuant to 15 M.R.S. § 103, Beauchene "has no liberty interest to insist that he be allowed to leave the hospital for community visits," is supported by section A(III)(D) of the RRMHS. *See* 13 C.M.R. 14 193 001–3 § A(III)(D) (2004) (providing that "[a]ll basic rights shall remain intact unless specifically limited through legal proceedings"). The Superior Court's 1970 order judicially limits Beauchene's right to visit the community, and the court's 2001 approval of a modified release treatment program did not restore that right because Beauchene remained in the Commissioner's custody.

[¶ 14] Moreover, the 2001 Superior Court approval of a modified release treatment program did not create a new right for Beauchene to visit the community, but instead created an administrative right giving the hospital complete discretion to determine whether and to what extent Beauchene could participate in community visits. The hospital exercised that discretion in determining that it was unsafe for Beauchene to visit the community, and in ceasing its authorization of his community visits.

[¶ 15] We cannot say that the RRMHS "compels a contrary result" from what the Commissioner found. *See Downeast Energy Corp.*, 2000 ME 151, ¶ 13, 756 A.2d at 951. The Commissioner did not err or abuse her discretion, and we do not second-guess the decision because it deals with a matter that falls within the Department's realm of expertise.[4] *See Imagineering*, 593 A.2d at 1053; *see also Green*, 2001 ME 86, ¶ 9, 776 A.2d at 615.

B. Whether the CSP Addresses the Limitation on Beauchene's Liberty Interest

[¶ 16] The Department contends that even if Beauchene has a right to community visits, and the hospital is limiting that right, the CSP fulfills the requirements of section B(III)(H) of the RRMHS. Beauchene contends that this issue is not preserved because it was not raised by the Department at the administrative level. *See New England Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56, 58, 60 (Me.1988).

[¶ 17] Although the Department did not raise this issue as a defense at the administrative level, the issue of whether

---

4. Because the Superior Court's approval confers a right on the hospital to exercise its discretion in deciding whether Beauchene has a right to community visits, Beauchene's contentions that the hospital's actions conflict with the Superior Court's release treatment order and violate the doctrine of the separation of powers are without merit.

Beauchene's CSP addresses the limitation on his right to community visits was placed before the administrative hearing officer by Beauchene, who repeatedly argued in his grievance that the limitation on his right to leave the hospital for community visits "has never been part of my treatment plan." *See Farley v. Town of Washburn*, 1997 ME 218, ¶ 5, 704 A.2d 347, 349 (stating that "we will consider an issue raised and preserved if there is sufficient basis in the record to alert the court and any opposing party to the existence of that issue"). Moreover, we cannot ignore that the record evidence clearly indicates that Beauchene's CSP does address the limitation on his visits to the community. The CSP specifically addresses the problem of Beauchene's "[r]estoration of privileges in the community—starting with a trip to see his elderly parents," and lists the long and short-term goals for resolving the problem, as well as ways in which the hospital staff will intervene to help him reach those goals.[5]

The entry is:

Judgment affirmed.

5. We disagree with Beauchene's contention that, by basing her decision "on the premise that there existed no limitations on [Beauchene's] liberties which were required to be addressed in the plan," the Commissioner "effectively accepted" that Beauchene's CSP does not address such limitations. The Commissioner expressly rejected the hearing officer's findings and conclusions related to this issue, and stated in her final decision that because Beauchene did not have a liberty interest, the limitation "need not be addressed in the [CSP] as 'any limitation of rights or liberties.'" Commissioner did not make any findings, express or implied, as to whether the CSP actually addressed the limitation.