STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-11-24
*MMM - KEN - 6/16/2013*

DANA CRANEY,
Petitioner

v.

**ORDER ON RULE 80C APPEAL**

PATRICIA BARNHART, et als.,
Respondents.

Presently before the Court is Petitioner Dana Craney's[1] 80C Appeal of a Final Agency Action against Warden Patricia Barnhart of the Maine State Prison, Warren, and other officers of said prison and of the Maine Department of Corrections challenging the Commissioner of the Maine Department of Corrections' ("DOC" or the "Department") denial of several grievances brought by Petitioner Craney claiming that the DOC failed to accommodate him as a Native American practitioner. Petitioner Craney claims that he has exhausted every administrative remedy within the DOC.

Prior to this 80C Petition, Petitioner Craney requested a temporary restraining order pursuant to M.R. Civ. P. 65(a) to be afforded the right to practice his religion under the First Amendment, which was denied by the Superior Court on July 8, 2011. Petitioner Craney also filed a Motion to Reconsider, which was denied by the Superior Court on December 21, 2011. On April 5, 2012, the Office of the Attorney General filed jointly a Motion to Dismiss, a Motion to Enforce Payment of Filing Fee, and Motion to Stay, which the Superior Court granted in part

---

[1] Petitioner Craney is representing himself in this action.

1

on April 17, 2012, thereby ordering Petitioner Craney to pay the sum of $68.20 from his client account, and to make further monthly payments of 20% of the preceding month's deposits until the entire filing fee of $150 is paid. The Superior Court stayed the Petitioner's appeal until the initial payment is received. A subsequent Motion to Dismiss was granted on June 7, 2012, but later vacated on June 22, 2012. On July 25, 2012, the Petitioner filed his brief in support of his Petitioner brought pursuant to M.R. Civ. P. 80C.

## STATEMENT OF THE FACTS

Petitioner Craney's initially appealed the DOC's decisions on three specific issues:

1. the adequacy of space allotted to Native American practitioners to perform smudging and other prayer ceremonies;[2]

2. the frequency of sweat lodge ceremonies; and

3. restriction on the use of tobacco for ceremonial purposes.

Petitioner Craney, with regard to the frequency of sweat lodge ceremonies, asserted that they should be held "weekly, monthly, quarterly," and on the solstices and equinoxes, among other times. He also acknowledges that volunteers qualified to conduct the ceremonies are required, but are frequently unavailable.

According to the findings of the prison's grievance review officer, group religious services must be conducted by approved volunteers, and only when such volunteers are available. Warden Barnhart denied Petitioner Craney's appeal, stating:

> It is true that there are a few outside volunteers that are recognized and/or available to conduct ceremonial activities for the Native American Group. Ceremonial practices are dictated by religious leaders and I am satisfied that we are making reasonable efforts to allow prisoners to practice their religious beliefs to the extent possible.

---

[2] Petitioner Craney subsequently withdrew his appeal as to the issue of proper shelter and space allotment for smudging and prayer ceremonies.

2

At the final appeal level of the grievance procedure, the Commissioner denied the grievance without further comment.

As to the third issue, the restrictions on the use of tobacco, the grievance review officer referred to an earlier letter to Petitioner Craney and others from Deputy Warden Leida Dardis, noting the prison's policy of allowing a qualified volunteer (a pipe carrier) to bring a small amount of tobacco into the prison for use in the ceremony, and to take the remaining tobacco upon leaving the prison. The grievance review officer also noted that when a supply of tobacco had been previously stored at the prison, the privilege was abused. The Warden upheld this first level decision without further comment, and the Commissioner, at the third level, affirmed, stating: "[t]he presence of tobacco in correctional facilities is a major issue, and it is a privilege for it to be used at all as there are other non-tobacco medicines that may be substituted in native ceremonies."

## DISCUSSION

The Court reviews the DOC's decision for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *See Beauchene v. Dep't of Health and Human Servs.*, 2009 ME 24, ¶ 11, 965 A.2d 866. Additionally, per 5 M.R.S.A. § 11007(4), the Court may reverse or modify the agency's decision only if it is:

    (1)    In violation of constitutional or statutory provisions;
    (2)    In excess of the statutory authority of the agency;
    (3)    Made upon unlawful procedure;
    (4)    Affected by bias or error of law;
    (5)    Unsupported by substantial evidence on the whole record; or
    (6)    Arbitrary or capricious or characterized by abuse of discretion.

The Court must also give "considerable deference to the agency's interpretation of its own rules, regulations, and procedures, and will not set aside the agency's findings unless the rule or

3

regulation plainly compels a contrary result." *Beauchene*, 2009 ME 24, ¶ 11, 965 A.2d 866

(internal citation omitted). The Court also acknowledges that when it acts in an appellate

capacity, as it does here, it may not "make factual findings independent of those made by the

agency . . . ." *Suzman v. Comm'r, Dep't of Health & Human Servs.*, 2005 ME 80, ¶ 24, 876

A.2d 29.

Petitioner Craney's first argument is that the named Respondents have not afforded him

access to a proper facility in order to practice daily, weekly, and monthly Native American

religious beliefs and ceremonies, specifically, that proper shelter for such practices is not

provided as is required for prayer and smudging ceremonies. The Code of Maine Rules

expressly provides for the accommodation of prisoners who wish to practice a particular religion:

> The Department shall accommodate any prisoner who expresses a desire to
> practice a religion of their choice provided this does not present a threat to safety,
> security, or orderly management of the facility. In addition, the Department may
> not place a substantial burden on a prisoner's practice of religion, regardless of
> whether a particular practice is considered essential, except in furtherance of a
> compelling state interest, such as safety, security, or orderly management of the
> facility, and only by the least restrictive means available.

03-201 C.M.R. ch. 10, § 24.3(III) (2009). *See also* 34-A M.R.S.A. § 3048 (providing: "[t]he

commissioner shall adopt rules that provide for the accommodation of any prisoner who

expresses a desire to practice a religion of the prisoner's choice as long as the practice does not

present a threat to the safety, security or orderly management of the facility . . . ."). Additionally,

the C.M.R. also requires that:

> [t]he religious services program shall provide prisoners, where feasible and not
> contrary to safety, security, or orderly management of the facility, with the
> opportunity to participate in group religious ceremonies . . . , and special religious
> programming *provided by approved faith group volunteers from the community*.
> Each facility shall have space and equipment for the provision of the religious
> services program.

03-201 C.M.R. ch. 10, § 24.3(VI)(A)(1) (2009) (emphasis added).

4

The Respondents assert that these are necessary regulations, and that while the infrequent availability of qualified volunteers is regrettable, it does not indicate DOC interference with the Petitioner's religious practices. Because Native American practitioners depend upon the availability of outside volunteers, there is little the prison can do to increase the number of sweat lodge ceremonies. There are also no grounds to suggest that prison officials have, as Petitioner Craney alleges, wrongfully restricted the Petitioner and other Native American practitioners from attending religious ceremonies.

With regard to the tobacco use issue, unless such use is incorporated as part of a religious ceremony, possession of tobacco by prisoners in a State correctional facility is prohibited. *See* 17-A M.R.S.A. § 757-A (indicating that a person is guilty of trafficking tobacco if "[t]hat person is confined in an adult correctional facility that has banned the use of tobacco or tobacco products by prisoners and the person intentionally obtains or possesses tobacco or tobacco products."). However, the Department has worked to accommodate Native American practitioners by creating a specific exception to allow for the introduction of tobacco to the facility by a volunteer conducting a religious ceremony, "provided any unused portions of the [tobacco] are removed from the facility by the volunteer after the completion of the ceremony." 03-201 C.M.R. ch. 10, § 24.3(VI)(E)(1) (2009).

The Department regulations control, and in many cases prohibit, the use of tobacco on prison grounds for security reasons, having found that the trafficking of tobacco creates a substantial security risk. Despite this, the Department has worked to accommodate Native American practitioners. One such was of protecting the sacred role of tobacco in Native American religious ceremonies is by prohibiting the storage of tobacco products at the prison facility. The Department reasonably found that limiting the use of tobacco to tobacco brought in

by religious volunteers achieves religious goals, and helps assure there is no trafficking of tobacco products at the facility. Such a regulation demonstrates the prison honors the sacred role of tobacco to Native American practitioners, and that trafficking therein has a denigrating effect. The Court agrees with the Department that denying Petitioner Craney unrestrained access to tobacco does not interfere with the practice of his sincerely held religious beliefs.

In addition to the above discussion, the Respondents argue that with regard to the issue of tobacco use, the Petitioner's appeal on that matter was not timely filed. The Department provides that it issued a final decision on Grievance 11-MSP-05 on March 10, 2011, and Petitioner Craney did not file his appeal until April 22, 2011, which is outside the time limit for filing an appeal of an administrative decision.[3] *See* 5 M.R.S.A. § 11002(3); *Fournier v. Dep't of Corr.*, 2009 ME 112, ¶ 2, 983 A.2d 403. However, even though Respondents are correct in asserting the untimely filing of the tobacco use and possession issue, the Court still includes the above analysis of the pertinent C.M.R. provisions so the Order reflects the Court's consideration of the issue.

The Court last addresses Petitioner Craney's allegations of violations of his state and federal constitutional rights.[4] Respondents assert that Petitioner Craney has failed to bring any arguments under any laws—statutory or case law—that afford protection to an inmate's religious

---

[3] In response to the Respondents' argument regarding the timeliness of Petitioner Craney's filing of his Rule 80C Petition, the Court observes that as to Grievance 11-MSP-15, filed by Petitioner Craney complaining of improper sweat lodge use and frequency, a final decision was issued by Commissioner Ponte on March 22, 2011. However, the Commissioner's final decision with regard to Grievance 11-MSP-05, in which Petitioner Craney asked to be allowed to use tobacco for purposes of prayer, was denied on March 10, 2011. Because Petitioner Craney filed his Petition pursuant to Rule 80C on April 22, 2011, it was timely filed only as to Grievance 11-MSP-15, but not as to Grievance 11-MSP-05. The Court agrees with Respondents that as to the issue of tobacco use and possession, it is barred due to untimely filing.

[4] The Court notes that Petitioner Craney did not frame his grievance as precisely as might usually be expected regarding a cognizable claim under the First Amendment to either the State or Federal constitution. Instead, Petitioner Craney asserts that he and other Native American practitioners were denied access to gather for proper scared sweat lodge ceremonies. The Court, for purposes of this Order, characterizes Petitioner Craney's grievance according to First Amendment analysis, and also provides analysis as if Petitioner Craney had alleged a violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc(1).

practices. *See e.g.*, Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. 2000cc(1); *Bader v. Wren*, 675 F.3d 95, 98 (1st Cir. 2012) (providing that "RLUIPA protects prisoners whose religious exercise has been substantially burdened by an unintended or incidental effect of a religiously-neutral government action or rule of general application."). Regardless, though, since Petitioner Craney fails to make out a claim that his right to practice his religion was violated under either the First Amendment or RLUIPA, the Court finds that Petitioner Craney fails in that regard while still addressing the rights generally afforded to prisoners under the First Amendment and, to some degree, the RLUIPA.

Prisoners clearly retain the protections afforded to them by the First Amendment, and must be provided with a reasonable opportunity to pursue their religion. *See* U.S. CONST. amend. I; *Cruz v. Beto*, 405 U.S. 319, 321 (1972) (safeguarding various First Amendment rights of incarcerated persons, such as the right to petition the government for redress of grievances). Necessarily, however, in order to adhere to valid penological concerns underlying the correctional system, incarceration requires the limitation or in some instances the withdrawal of many rights and privileges available to non-prisoners. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (acknowledging that incarceration results in a circumscription of First Amendment freedoms). Prison authorities may regulate a prisoner's exercise of religion when faced with legitimate institutional concerns, so long as such regulation does not amount to an unreasonable interference with a prisoner's exercise of his or her religious beliefs. *See Pell v. Procunier*, 417 U.S. 817, 822 (1974) (recognizing that "challenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system . . . .").

7

Considering this prescribed analysis, the Court finds that the DOC has engaged in appropriate burden and benefit weighing. The DOC has managed to institute reasonable regulations while at the same time providing for the exercise of a significant range of religious beliefs and practices. The record reflects ample correspondence between prison officials, including Commissioner Joseph Ponte and Prison Chaplain Walter Foster, and the Petitioner (along with other undersigned fellow practitioners) carefully detailing the prison's policy with respect to Native American issues and the reasons for implementing any restrictions.

A review of the record indicates that the Department did not arbitrarily formulate overly restrictive religious practice policies out of a need for convenience; the Department has clearly and respectfully addressed the needs of Native American inmates even when faced with legitimate security concerns. The prison has, perhaps in light of the threat of judicial actions such as this, articulated a rational relationship between the restrictions of which Petitioner Craney complains and a legitimate penological objective, which entirely satisfies the burden borne by the Department. *See O'Lone*, 482 U.S. at 350 (addressing the burden imposed on prison officials to disprove the availability of alternative methods of accommodating a prisoner's constitutional complaint).

Turning to the RLUIPA, 42 U.S.C. § 2000cc(1) provides:

No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—

(A) is in furtherance of a compelling governmental interest; and

(B) is the least restrictive means of furthering that compelling governmental interest.

Federal courts have found that a "substantial burden" exists where:

8

1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR

2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007). Last, a claim under RLUIPA is comprised of four elements.

> On the first two elements, (1) that an institutionalized person's religious exercise has been burdened and (2) that the burden is substantial, the plaintiff bears the burden of proof. Once a plaintiff has established that his religious exercise has been substantially burdened, the onus shifts to the government to show (3) that the burden furthers a compelling governmental interest and (4) that the burden is the least restrictive means of achieving that compelling interest.

*Cookson v. Comm'r, Maine Dep't of Corr.*, 2012 WL 32378, at *9 (D. Me. Jan. 4, 2012).

Courts are also instructed to apply to RLUIPA analysis "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (internal citation omitted). The Respondents correctly argue that giving due deference to the judgment of prison officials, the restrictions imposed on Petitioner Craney do not amount to an RLUIPA violation.

Petitioner Craney's religious exercise has not been unreasonably burdened, and has arguably not been burdened at all. The analysis—per the application of the four factors described in *Cookson*—must end there, for if the Court finds the Petitioner has not been unduly burdened, there follows no "substantial burden" analysis, and therefore the burden does not shift to the government to prove either a compelling governmental interest or that its method embodies the least restrictive means to achieving that compelling interest. Despite this, the prison has still made sweat lodge ceremonies available to Petitioner Craney and his fellow

9

Native American inmates, and there exists a significant compromise when the alternative to accommodation is the complete ban on both the ceremonies and tobacco use, albeit in a controlled fashion as described above.

**The entry will be:**

**The decisions of the Department of Corrections denying Petitioner Craney's grievances are AFFIRMED.**

6/6/13

DATE

SUPERIOR COURT JUSTICE

10

| Date Filed | 4/22/11 | Kennebec | Docket No. | AP-11-24 |

County

**J. Murphy**

Action ___Petition For Review___
80C

| | |
|---|---|
| Dana Craney | vs. Patricia Barnhart, Warden, et al. |

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Dana Craney, Pro Se<br>Maine State Prison<br>807 Cushing Road<br>Warren, ME  04864 | James E. Fortin, AAG<br>6 State House Station<br>Augusta, ME  04333-0006 |

| Date of Entry | |
|---|---|
| 4/26/11 | Petition For Judicial Review Of Final Agency Action, Application To Proceed Without Payment Of Fees, Indigency Affidavit, Certificate of account, Motion For Extension Of Time, filed 4/22/11.  s/Craney, Pro Se |
| 4/29/11 | ORDER, Nivison, J. (4/28/11)<br>The filing fee is waived.  The applicant is to attempt service by mail with acknowledgement.<br>Copy to Plaintiff. |
| 5/5/11 | Affidavit, filed. s/Craney, Pro Se<br>Motion for Temporary Restraining Order, filed. s/Craney, Pro Se |
| 5/18/11 | Certified mail receipt with return service made upon Patricia Barnhart on 5/13/11<br>Certified mail receipt with return service made upon Walter Foster on 5/13/11<br>Certified mail receipt with return service made upon Robert Costigan on 5/13/11<br>Certified mail receipt with return service made upon James O'Farrell on 5/13/11<br>Certified mail receipt with return service made upon Leida Dardis on on 5/13/11<br>Certified mail receipt with return service made upon Joseph Ponte on 5/13/11 |
| 7/12/11 | ORDER, Murray, J. (7/8/11)<br>Accordingly, plaintiff's motion is hereby denied.<br>Copies to parties |
| 8/8/11 | Certified Mail Receipt served upon Leida Dardis, Joseph Ponte, Patricia Barnhart, Walter Foster, James O'Farrell, Robert Costigan,<br><br>Motion to Reconsider, filed. s/Craney, Pro Se  (8/5/11) |

| Date of Entry | |
|---|---|
| 8/9/11 | Certified Mail Receipt for service on Joseph Ponte, Commissioner, Department of Corrections; James O'Farrell; Robert Costigan, PAC; Walter Foster, Chaplain; Leida Dardis, Deputy Warden; Patricia Barnhart, Warden. |
| 10/4/11 | Motion to Partial With-Draw Without Prejudice, filed. s/Craney, Pro Se |
| 12/28/11 | ORDER DENYING MOTION TO RECONSIDER, Murray, J. (12/21/11) Accordingly, the Motion to Reconsider is hereby, DENIED. Copy to party. |
| 2/3/12 | ORDER, Murphy, J. (2/2/12) Motion to withdraw (Partial) certain requests made in Petition regarding "proper shelter" and prayer ceremonies is granted. Copy to Petitioner. |
| 3/27/12 | Notice and Briefing Schedule issued. Copy to parties. |
| 4/12/12 | Notice of Appearance, filed 4/6/12. s/Fortin, AAG Motion to Dismiss, Motion to Enforce Payment of Filing Fee and Motion to Stay, filed 4/6/12. s/Fortin, AAG |
| 4/12/12 | Response to Respondents Motion To Dismiss, and Motion To Enforce Payment Of Filing Fee and Motion To Stay, filed 4/10/12. s/Craney, Pro Se (w/ copy of letter to AAG Fortin dated 4/6/12) |
| 4/17/12 | ORDER, Murphy, J. Respondents' Motion to Enforce Payment of Filing Fee and Stay is GRANTED. Petitioner is ordered to pay $68.20 from his client account and to make further monthly payments of 20% of the preceding month's deposits until the entire filing fee of $150 is paid. The appeal will be stayed until the initial payment is received. Copy to Petitioner and AAG Fortin. |
| 4/19/12 | Certified Mail receipt, delivered 4/10/12, no signature, addressed to James E. Fortin, AAG, filed 4/17/12. s/Craney, Pro Se |
| 4/23/12 | Letter requesting notification when initial filing fee paid and asking whether the court will issue revised briefing schedule, filed 4/20/12. s/Fortin, AAG |
| 5/15/12 | Motion to Dismiss, filed. s/Fortin, AAG |
| 6/7/12 | ORDER, Murphy, J. Motion to Dismiss is GRANTED. The appeal is dismissed with prejudice. Copy to Petitioner and AAG Fortin |
| 6/22/12 | Payment of $68.20, Money Transfer receipt dated 5/19/12, Motion for Enlargement of Time Once Stay is Lifted, Answer on Respondent's Motion to Dismiss, filed 6/11/12. s/Craney, Pro Se |
| 6/22/12 | Trust Account Statement, filed 6/11/12. s/Craney, Pro Se Payment of $41.80, filed 6/11/12. s/Craney, Pro Se |
| 6/22/12 | ORDER, Murphy, J. Order on Motion to Dismiss is VACATED. Court advised Mr. Craney did pay the fee but prison did not mail it timely to the Court. Copy to Petitioner and AAG Fortin |

| Date of Entry | |
|---|---|
| 6/28/12 | Agency Record, filed 6/26/12. Request for revised briefing schedule. s/Fortin, AAG |
| 7/5/12 | Notice And Briefing Schedule, issued 7/2/12. Copy to Petitioner and AAG Fortin |
| 7/18/12 | Letter and two Trust Account statements, filed 7/9/12. s/Craney, Pro Se Payment of $11.89, filed 7/9/12. |
| 7/25/12 | Payment of $28.11 received on 7/19/12 from DOC. |
| 8/1/12 | Petitioners Brief and attachments, filed 7/25/12. s/Craney, Pro Se Original grievance letters, filed 7/25/12. s/Craney, Pro Se |
| 8/10/12 | Motion to Supplement Record, filed. s/Fortin, AAG |
| 8/17/12 | Brief of the Respondents, filed. s/Fortin, AAG |
| 8/29/12 | Reply to Respondents Brief, filed 8/28/12. s/Craney, Pro Se |
| 9/10/12 | ORDER, Murphy, J. The motion is GRANTED. The record is supplemented with certified copies of grievance #11-MSP-05 and #11-MSP-15. Copies to atty/party |
| 9/18/12 | Supplement to Record, filed 8/10/12. |
| 11/6/12 | Oral argument scheduled for 11/29/12. List mailed to Petitioner and AAG Fortin on 11/2/12. |
| 11/7/12 | Writ of Habeas Corpus Ordered by J. Murphy on 11/6/12. Attested copies to Kennebec S.O. |
| 11/19/12 | Letter informing the court of surgery and requesting continuance of 11/29/12 hearing, filed. s/Craney, Pro Se |
| 11/21/12 | ORDER, Murphy, J. Granted. Set for February or March 2013. Copy to Petitioner and AAG Fortin |
| 2/21/13 | Letter informing the Court that Petitioner is able to appear by writ and requesting the case be scheduled, filed. s/Craney, Pro Se |
| 3/12/13 | Oral argument scheduled for 4/4/13. List mailed to Petitioner and AAG Fortin. |
| 3/20/13 | Writ of Habeas Corpus Ordered by J. Nivison on 3/13/13. Attested copies to Kennebec S.O. |
| 4/10/13 | Oral argument held 4/4/13. J. Michaela Murphy presiding. Dana Craney, Pro Se and James Fortin, AAG Tape 1657, Index 2785-3416. Under advisement |
| 6/6/13 | ORDER ON RULE 80C APPEAL, Murphy, J. The decisions of the Department of Corrections denying Petitioner Craney's grievances are AFFIRMED. Copy to Petitioner and AAG Fortin. Copy to repositories. |