STATE OF MAINE
KENNEBEC, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-19-30

MAINE VETERANS' HOMES

Petitioner,

v.

**ORDER**

JEAN M. LAMBREW, COMMISSIONER,
MAINE DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

Respondent.

Before the Court is Petitioner Maine Veterans' Homes's, ("MVH's") Rule 80C petition for review of the Commissioner of the Department of Health and Human Service's denial of MVH's request for an extraordinary circumstance allowance for fiscal years 2015 and 2016. MVH is represented by Attorney William H. Stiles. The Commissioner is represented by Assistant Attorney General Thomas C. Bradley. Oral argument in this case was held on February 4, 2020. For the following reasons, the Court affirms the Commissioner's decision.

**FACTS**

MVH is enrolled as a MaineCare provider for nursing facility services. (R. 1129.) Pursuant to the rules set forth in the MaineCare Benefits Manual ("MBM"), MVH is reimbursed by MaineCare for its allowed direct care costs, routine costs, and fixed costs. 10-144 C.M.R. ch 101, § 67.15. The amount that MVH is reimbursed is determined by MVH's inflation adjusted costs as calculated in its base year. 10-144 C.M.R. ch 101, § 67.22. Fiscal year 2011 was the base year used for determining MVH's fiscal year 2015 and fiscal year 2016 reimbursement. (R. 1129; 1208.)

1

Amounts that MVH contributes to the Maine Public Employees Retirement System ("MEPERS") are included in its direct care and routine cost components.[1] 10-144 C.M.R. ch 101, §§ 67.16.1.7, 67.17.4.1. Unlike Social Security tax rates, which are set by statute, the MEPERS contribution rate is set annually by the MEPERS' Board of Trustees. (R. 94; 1129.) MVH has no control over the rates set by the MPERS Board of Trustees. (R. 94; 1129.)

In fiscal year beginning July 1, 2011, MVH's retirement contribution rate was 4.4%. (R. 1013.) This was an increase from the 3.5% rate in the year beginning July 1, 2010 and the 2.8% rate in the year beginning July 1, 2009. (R. 1013.) The retirement contribution rate also continued to increase each year following 2011, rising to 5.3% in 2012, 6.5% in 2013, 7.8% in 2014, 8.9% in 2015, and 9.5% in 2016. (R. 1013.) The retirement contribution rate had remained steady at 2.8% for the nine years preceding July 1, 2009. (R. 1013.)

Because of the disparity between the base year contribution rate and its actual fiscal year 2015 and fiscal year 2016 contribution rate, MVH filed a request on November 30, 2016 for an extraordinary circumstance allowance for fiscal years 2015 and 2016. (R. 994-95.) On May 4, 2017, the Department denied MVH's request on the grounds that the increase in the MPERS employer contribution rate was not an unforeseen event. (R. 998.) The Department supported this finding by pointing to the fact that the employer contribution rate had increased every year since the base year, 2011. (R. 998-99.) MVH requested an informal review and the Department subsequently affirmed its denial in a written final informal review decision. (R. 1000-016.) Following an administrative hearing, the Commissioner issued a Final Decision accepting the

---

[1] MVH's "direct care costs" also include costs such as salary, wages, and benefits for medical personnel and its "routine costs" also include non-medical expenses such as administrative functions, food, and utilities. 10-144 C.M.R. ch 101, §§ 67.16.1., 67.17.4.

2

hearing officer's Recommended Decision to affirm the FIRD. (R. 1168.) MVH timely filed this appeal.

**STANDARD OF REVIEW**

Pursuant to M.R. Civ. P. 80C, the Superior Court must review an agency's decision directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Doe v. Dep't of Health and Human Services,* 2018 ME 164, ¶ 11, 198 A.3d 782. The Court will not vacate an agency's decision unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or an error of law; or is unsupported by the evidence in the record. *Kroeger v. Dep't of Envtl. Prot.,* 2005 ME 50, ¶ 7, 870 A.2d 566. Although questions of law are subject to de novo review, *Id* (citing *York Hosp. v. Dep't of Health & Human Servs.,* 2008 ME 165, ¶ 32, 959 A.2d 67), courts "give considerable deference to [an] agency's interpretation of its own rules, regulations, and procedures." *Beauchene v. Dept. of Health and Human Services,* 2009 ME 24, ¶ 11, 965 A.2d 866. The reviewing court will affirm findings of fact if they are supported by "substantial evidence in the record", even if the record contains inconsistent evidence or evidence contrary to the result reached by the agency. *Passadumkeag Mountain Friends v. Bd. of Environmental Prot.,* 2014 ME 116, ¶¶ 12, 14, 102 A.3d 1181.

**DISCUSSION**

The MaineCare Benefits Manual provides that

Facilities which experience unforeseen and uncontrollable events during a year that result in unforeseen or uncontrollable increases in expenses may request an adjustment to a prospective rate in the form of an extraordinary circumstance allowance. Extraordinary circumstances include, but are not limited to: . . .

3

unforeseen increase in minimum wage, Social Security, or employee retirement contribution expenses in lieu of social security expenses . . . . If the Department concludes that an extraordinary circumstance existed, an adjustment will be made by the Department in the form of a supplemental allowance. The Department will determine from the nature of the extraordinary circumstance whether it would have a continuing impact and therefore whether the allowance should be included in the computation of the base rate for the succeeding year.

CMR 10-144, ch. 101, § 67.34.

In this case, the parties do not dispute that MVH contributes to the MPERS in lieu of social security. There is also no dispute that MVH's retirement contribution rate increased in both 2015 and 2016 and that MVH had no control over the increase. Instead, the parties dispute whether the contribution rate increase must have been both unforeseeable and uncontrollable in order to obtain an extraordinary circumstance allowance and whether the contribution rate increase in this case was an unforeseeable event.

The court believes that the Department correctly interpreted section 67.34 of the MBM. The plain language of section 67.34 draws a distinction between an event (which must be both unforeseen and uncontrollable) and the resulting increase in expenses (which may be either unforeseen or uncontrollable). The court does not believe that the "sense of the rule" requires a conversion of "and" to "or" as MVH argues.[2] Further, section 67.34 specifically lists as an example of an extraordinary circumstance an "unforeseen increase in . . . employee retirement contribution expenses . . . ." Given the foregoing, the court believes that the department correctly determined that in order for MVH to obtain an ECA based on the increase in MVH's employee retirement contribution expenses, the increase in MVH's employee retirement contribution rate must have been unforeseen.

---

[2] 1 M.R.S. § 71(2) provides that "[t]he words "and" and "or" are convertible as the sense of a statute may require." The court notes that this case involves the interpretation of a rule and not a statute. *See Beauchene*, 2009 ME 24, ¶ 11, 965 A.2d 866.

The Court agrees with MVH that the determination of whether an event or increase in expenses was unforeseen must be made by looking at what was foreseeable in the base year. Allowing events occurring after a base year to inform the foreseeability analysis could lead to the absurd consequence that the occurrence of an unforeseen and uncontrollable event in one year (for which an ECA is allowed) would thereby render any similarly occurring event foreseeable (and thus not capable of obtaining an ECA) even though the second identical event would have been unforeseen had the first not occurred. Looking to what was foreseeable in the base year avoids this absurd and inconsistent result and would allow an ECA for two identical events which occur in different years.

The problem for MVH in this case, however, is that there is record evidence that MVH's retirement contribution rate increased to 3.5% from 2.8% in the fiscal year beginning July 1, 2010, which was MVH's base year. (R. 1000, 1013-1015, 1208.) There is thus competent record evidence which supports a finding that an increase in MVH's retirement contribution rate was foreseeable in the base year.[3]

Finally, the court is not persuaded that the Department's decisions in the *Barron Center* or *Seaside Heights* matters require the Department to provide MVH with an ECA in this case.[4] The *Barron Center* matter involved the City of Portland's unforeseen decision to pay off an unfunded liability by pursuing a bond issue whereas the *Seaside Heights* matter involved the

---

[3] While the court believes that this evidence could also support a finding that an increase in MVH's employee retirement contribution rate was unforeseeable, this is not the standard that must be applied in this appeal. *See Passadumkeag Mountain Friends*, 2014 ME 116, ¶¶ 12, 14, 102 A.3d 1181; *see also Gulick v. Bd. of Envtl. Prot.*, 452 A.2d 1202, 1209 (Me. 1982) ("Judges may not substitute their judgment for that of the agency merely because the evidence could give rise to more than one result").

[4] These matters are prior decisions in which the Department granted requests for an ECA. The final agency decision in both has been included in the record. (R. 171, 191-93.) MVH contends that the material facts in this case are identical to those in *Barron Center* and *Seaside Heights* and that the Commissioner's decision in this case thus represents an unexplained departure from the Department's prior interpretation of "unforeseen." (Pet'r's Br. at 17, 19.)

5

unforeseen admittance of a patient with a severe spinal cord injury who would require more staffing and equipment than a traditional nursing patient. (R. 175, 192.) Moreover, the complete administrative record of those matters has not been included in this case. Without the benefit of those records, the court is not able to determine whether the events at issue in *Barron Center* and *Seaside Heights* "were clearly not 'unforeseen'"" as MVH argues. (Pet'r's Br. at 18.)

**The entry is**

**The Decision of the Commissioner of the Department of Health and Human Services is AFFIRMED.**

Date: _____

_____
**Justice, Superior Court**