2009 ME 135

**Robert J. MULREADY**

v.

**BOARD OF REAL ESTATE APPRAISERS.**

Supreme Judicial Court of Maine.

Argued: Oct. 30, 2009.

Decided: Dec. 29, 2009.

Scott J. Lynch, Esq. (orally), Homblower Lynch Rabasco & Van Dyke, P.A., Lewiston, ME, for Robert J. Mulready.

Janet T. Mills, Attorney General, Andrew L. Black, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, ME, for the Maine Board of Real Estate Appraisers.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

MEAD, J.

[¶ 1] Robert J. Mulready appeals from a judgment entered in the Superior Court (Kennebec County, *Jabar, J.*), affirming the decision of the Board of Real Estate Appraisers (BREA) (*Bowditch, Acting Chairman*) to issue a warning and order him to pay hearing costs pursuant to 10 M.R.S. §§ 8003(5–A)(A)(2), (B)(2),[1] 8003–

---

1. The relevant portions of 10 M.R.S. § 8003(5–A)(A)(2), (B)(2) (2008) provide:

A. The office, board or commission may deny or refuse to renew a license, may suspend or revoke a license and may impose other discipline as authorized in this subsection for any of the following reasons:

. . . .

(2) Any gross negligence, incompetence, misconduct or violation of an applicable code of ethics or standard of practice while engaged in the occupation or profession for which the person is licensed.

. . . .

B. The office, board or commission may impose the following forms of discipline upon a licensee or applicant for licensure:

. . . .

(2) Issuance of warning, censure or reprimand. Each warning, censure or reprimand issued must be based upon violation of a single applicable law, rules or condition of licensure or must be based upon a single instance of actionable conduct or activity.

D [2] (2008). The BREA found that Mulready violated the *Uniform Standards of Professional Appraisal Practice and Advisory Opinions'* (*USPAP*) Standards Rule 2–1(b) [3] and Ethics Rule on Conduct. [4] Because the two rules fall within the BREA's realm of expertise and do not plainly compel another result, and because the BREA's factual findings are supported by the record, we affirm the judgment.

## I. BACKGROUND

[¶ 2] Mulready has been licensed as a certified general appraiser in Maine since January 24, 2000. In June 2005, Dead River 80 Exchange Street, LLC (Dead River) purchased an office building located at 80 Exchange Street in Bangor (80 Exchange) for $2,700,000. In April 2005, the City of Bangor's Tax Assessor (Assessor) had valued it at $6,323,600. Dead River hired Mulready to assist with the tax abatement process.

[¶ 3] In a letter dated September 6, 2005, Mulready informed the Assessor that he had been retained by Dead River regarding the assessment of 80 Exchange. The Assessor responded that he would "need a copy of the engagement letter from Dead River 80 Exchange LLC designating you as their representative," among other documents. He wrote that, without the documents, he could not discuss the assessment with Mulready or begin a review. On September 14, Dead River's asset manager sent the Assessor a letter, stating that Mulready was Dead River's "duly authorized agent ... regarding all matters related to the assessment of" 80 Exchange.

[¶ 4] In a December 18, 2005, letter, Mulready thanked the Assessor and another staff member for meeting with him on December 13 about "our application for an abatement." He also wrote:

> In the last few months I have had various reasons to review several properties owned by Dead River Properties. They are well managed, well maintained and ownership has a pride in the communities they are involved in.... The building requires over $2,100,000 in capital improvements and tenant fit up to what is recognized as *a tired building.* Within 12 months to 24 months this property will have been returned to the market as a full Class A office building.

Mulready opined that 80 Exchange had a value of $3,500,000.

[¶ 5] The Assessor denied the abatement application on December 28, 2005. On January 22, 2006, Mulready wrote a letter to the chairperson of the Board of Assessment Review (BOAR) stating, "we wish to appeal" the abatement denial. In signing the letter, he identified himself as Dead River's "Duly Authorized Agent."

2. The pertinent portion of 10 M.R.S. § 8003–D (2008) provides: "When there is a finding of a violation, a board or commission ... may assess the licensed person or entity for all or part of the actual expenses incurred by the board, commission or its agents for investigations and enforcement duties performed."

3. The relevant portion of Standards Rule 2–1 provides: "Standards Rule 2–1 (This Standards Rule contains binding requirements from which departure is not permitted.) Each written or oral real property appraisal must: ... (b) contain sufficient information

to enable the intended users of the appraisal to understand the report properly." Appraisal Standards Bd., *Uniform Standards of Professional Appraisal Practice and Advisory Opinions (USPAP)*, Standards Rule 2–1, at 22 (2005) (emphasis omitted).

4. The part of the Ethics Rule on Conduct at issue states: "In appraisal practice, an appraiser must not perform as an advocate for any party or issue." *USPAP*, Ethics Rule (Conduct), at 7 (emphasis omitted).

[¶ 6] On April 11, 2006, Mulready sent Dead River's attorney a "Complete Summary Appraisal Report" that he had prepared. In the cover letter transmitting his report, Mulready concluded that the market value of 80 Exchange based on a fee simple appraisal was $3,885,000. In the report itself, he stated that 80 Exchange is located in a moderate climate according to the Marshall and Swift Valuation Service (Marshall and Swift) terminology.

[¶ 7] Mulready's report was submitted as part of Dead River's appeal to the BOAR. At the beginning of the BOAR hearing, Mulready and Dead River's attorney notified the BOAR members that Mulready had made an error when calculating the gross rental area of Comparable Land Sale #2 (Comparable Sale 2). At the hearing, Dead River's attorney called Mulready as a witness. On May 9, 2006, the BOAR granted Dead River an abatement based on its determination that the original assessment had been "manifestly wrong."

[¶ 8] On May 26, 2006, Paul Linehan of Maine Valuation Company, who had reviewed Mulready's report for the City of Bangor, filed a complaint on behalf of the Assessor against Mulready with the Office of Licensing and Registration, which includes the BREA. 10 M.R.S. § 8001(38)(CC) (2008). He alleged that Mulready's report did not comply with the USPAP, that its conclusions were not properly supported, and that the results were unreliable. He also alleged that there was "some question in the assessor's mind regarding [Mulready's] initial role as a consultant—'advocate'" and then acting as "an 'unbiased' appraiser."

[¶ 9] In its decision approved on January 8, 2008, the BREA found that statements in Mulready's December 18, 2005,

and January 22, 2006, letters, as noted above, constituted advocacy and that he had acted as an advocate for Dead River in the abatement appeal in violation of the USPAP's Ethics Rule on Conduct. The decision also noted that Mulready's report did not mention his previous work for Dead River on its abatement application. The BREA found that he "perform[ed] an appraisal to support his own advocacy." However, there were insufficient votes to find violations of six other USPAP or statutory requirements, including another portion of the Ethics Rule on Conduct.[5]

[¶ 10] Regarding the USPAP's Standards Rule 2–1(b), the BREA found that the appraisal contained several errors or omissions, which constituted a violation. First, it found that Mulready should have evaluated 80 Exchange as a leased fee, rather than as a fee simple interest. Second, it found that he should have labeled the Bangor climate as "extreme," not "moderate" per Marshall and Swift, and that he did not explain his reasoning for the departure. The BREA additionally found:

> [I]t was at first unclear without supplemental information whether the respondent calculated gross rental area or net rental area regarding the subject and comparable properties. Additionally, the respondent's depreciation calculations were confusing and misleading due to a lack of information which led both the city's review assessor and an expert appraiser testifying for Mr. Mulready to question whether he had double counted for depreciation.

The decision also noted Mulready's admitted calculation errors regarding the gross rental area for Comparable Sale 2 and the acreage of Comparable Land Sale #3

---

5. An appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests. *Id.* (emphasis omitted).

(Comparable Sale 3). For this violation and the Ethics Rule on Conduct violation, the BREA issued Mulready a warning and imposed hearing costs of $3093.75.

[¶ 11] On February 5, 2008, Mulready timely appealed to the Superior Court pursuant to M.R. Civ. P. 80C. The court found no inconsistency in the BREA's finding that Mulready had acted as an advocate and the finding that he had not violated another portion of the Ethics Rule on Conduct. The court noted that the BREA had not affirmatively concluded that Mulready had acted impartially, objectively, independently, and without accommodation of personal interest; it simply found the evidence insufficient to prove a violation of the rule.

[¶ 12] The court determined that Mulready was correct in using a fee simple calculation, rather than a leased fee calculation, a point that the State concedes. The court found nevertheless that there was sufficient evidence in the record to support the BREA's conclusion that Mulready had violated Standards Rule 2–1(b). This appeal followed.

## II. DISCUSSION

### A. Standard of Review

[¶ 13] "When the Superior Court acts in an intermediate capacity to review an administrative agency's decision pursuant to M.R. Civ. P. 80C, we directly review the agency's decision for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Beauchene v. Dep't of Health & Human Servs.*, 2009 ME 24, ¶ 11, 965 A.2d 866, 870 (quotation marks omitted); *see also Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551, 555. Considerable deference is given "to the agency's interpretation of its own rules, regulations, and procedures, and [we] will

not set aside the agency's findings unless the rule or regulation plainly compels a contrary result." *Beauchene*, 2009 ME 24, ¶ 11, 965 A.2d at 870 (quotation marks omitted); *see also Seider*, 2000 ME 206, ¶ 32, 762 A.2d at 561. We will not "second-guess the agency on matters falling within its realm of expertise." *Wood v. Superintendent of Ins.*, 638 A.2d 67, 71 (Me.1994).

### B. *USPAP* Ethics Rule on Conduct Violation

[¶ 14] The *USPAP's* standards and rules set minimum requirements for professional appraisal practice and ethics. 32 M.R.S. § 14028 (2008). The *USPAP's* Ethics Rule on Conduct prohibits appraisers from acting as advocates "for any party or issue." Appraisal Standards Bd., *Uniform Standards of Professional Appraisal Practice and Advisory Opinions*, Ethics Rule (Conduct), at 7 (2005). The *USPAP* defines advocacy as "representing the cause or interest of another, even if that cause or interest does not necessarily coincide with one's own beliefs, opinions, conclusions, or recommendations." *Id.* at 1. Additionally, the commentary notes: "An appraiser may be an advocate only in support of his or her assignment results. Advocacy in any other form in appraisal practice is a violation of the Ethics Rule." *Id.* Ethics Rule (Conduct) cmt., at 7 (capitalization omitted).

[¶ 15] Mulready argues that the BREA's finding that he acted as an advocate contradicts its earlier finding that he had not violated another portion of the Ethics Rule on Conduct. He alleges that the BREA could not logically find that he had been an advocate for a party or issue and yet also find that he had acted impartially, objectively, independently, and without accommodation of personal interests. Therefore, he contends that the BREA's

advocacy finding was arbitrary and capricious.

[¶ 16] The record, however, clearly shows that the BREA did not render an affirmative finding that Mulready acted impartially, objectively, independently, and without accommodation of personal interests. *See id.* Rather, there were simply insufficient votes to find that Mulready had violated this requirement. The fact that the State failed to sustain its burden of proof on this point does not constitute a contrary finding. The two votes were not inconsistent.

■ [¶ 17] We will defer to the BREA's interpretation of the Ethics Rule on Conduct, which is within its realm of expertise, unless the rule clearly compels a different result *See Seider,* 2000 ME 206, ¶ 32, 762 A.2d at 561; *Wood,* 638 A.2d at 71. According to the rule itself, the requirement that "[a]n appraiser must perform assignments with impartiality, objectivity, and independence, and without accommodation of personal interests" is separate from the requirement that "an appraiser must not perform as an advocate for any party or issue." *USPAP,* Ethics Rule (Conduct), at 7 (emphasis omitted). Mulready could have acted as an advocate during the abatement appeal—and the record supports the BREA's finding that he did—regardless of whether his appraisal report was later performed impartially. *See id.* Thus, we cannot say that the Ethics Rule on Conduct "plainly compels a contrary result," and we will not second-guess the BREA's interpretation of it. *Seider,* 2000 ME 206, ¶ 32, 762 A.2d at 561; *Wood,* 638 A.2d at 71.

C. *USPAP* Standards Rule 2–1(b) Violation

■ [¶ 18] We will also defer to the BREA's interpretation of the *USPAP's*

Standards Rule 2–1(b), which is within its realm of expertise, unless the rule clearly compels a different result. *See Seider,* 2000 ME 206, ¶ 32, 762 A.2d at 561; *Wood,* 638 A.2d at 71. Standards Rule 2–1 "contains binding requirements from which departure is not permitted." *USPAP,* Standards Rule 2–1, at 22 (emphasis omitted). It provides: "Each written or oral real property appraisal report must: . . . (b) contain sufficient information to enable the intended users of the appraisal to understand the report properly." *Id.* (emphasis omitted).

■ [¶ 19] First, Mulready argues that the BREA was incorrect in stating that he should have evaluated 80 Exchange as a leased fee instead of a fee simple interest, a point that the State concedes. We have previously held that, for tax purposes, property should be evaluated according to its fee simple value to prevent "an unequal tax on taxpayers who own the same or similarly situated property but manage it differently." *Town of Sanford v. J & N Sanford Trust,* 1997 ME 97, ¶ 17, 694 A.2d 456, 461. Thus, the BREA erred in finding that Mulready should have evaluated 80 Exchange as a leased fee.

■ [¶ 20] However, "[w]e will not disturb a judgment if an error is harmless." *Tolliver v. Dep't of Transp.,* 2008 ME 83, ¶ 39, 948 A.2d 1223, 1235. A preserved error is harmless "if it is highly probable that the error did not affect the judgment." *Id.* The BREA's error on this issue was harmless because it was not identified during the deliberations as a basis for finding a violation or determining a sanction, and because there was sufficient evidence, as discussed below, for the BREA to conclude that Mulready had violated Standards Rule 2–1(b). *See id.*

■ [¶ 21] Mulready also contends that he did not err in his calculations

regarding Bangor's climate and depreciation. He argues that his report contained sufficient information on those issues and on whether he had used gross or net rentable area for Comparable Sale 3 to be understandable to the intended users. He notes that he corrected his error about the gross rental area of Comparable Sale 2 before the BOAR hearing began.

[¶ 22] Contrary to Mulready's contentions, however, he admitted at the BREA hearing that he did not note in his appraisal report that he was departing from Marshall and Swift's climate recommendation, give his rationale for doing so, or explain whether he used gross or net rentable area for Comparable Sale 3 or how he calculated it. Also, he admitted that he had made an error when calculating the acreage of Comparable Sale 3 [6] and the gross rental area of Comparable Sale 2. What information is needed for a summary appraisal report to be understandable and what may

be omitted are matters within the BREA's realm of expertise. *See Seider*, 2000 ME 206, ¶ 32, 762 A.2d at 561. Mulready's report contained some ambiguities and admitted errors, and we will not attempt to second-guess the BREA's interpretation of Standards Rule 2–1(b) that those errors and ambiguities constituted a violation of the rule. *See id.; Wood*, 638 A.2d at 71.

 [¶ 23] His remaining argument regarding bias upon the part of a BREA member is without merit.[7]

The entry is:

Judgment affirmed.

---

6. Mulready argues that this admission should not have been included in the BREA's decision because it was not identified as an error prior to the hearing and the hearing officer stated it was not sanctionable. We conclude that it was proper for the BREA to include this error in its decision because, during cross-examination on a related issue, Mulready volunteered that he had made the mistake and how he made it, and the record supports that he did make the error.

7. Mulready argues that a BREA member was biased against him. He claims that various statements made by that member during the

deliberative process demonstrate this bias. The remarks at issue were made at the end of a lengthy hearing and, when viewed in context, simply reflect the member's views of the case's merits after a full consideration of the evidence. Mulready has not satisfied his burden in proving bias. *See Liteky v. United States*, 510 U.S. 540, 555–56, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975); *Lane Constr. Corp. v. Town of Washington*, 2008 ME 45, ¶ 30, 942 A.2d 1202, 1211.