STATE OF MAINE
CUMBERLAND, ss.

BUSINESS & COUNSUMER DOCKET
DOCKET NO. BCD-CV-17-52

JAMES BLANCHARD, et al.,           )
                                   )
        Plaintiffs,                )
                                   )
v.                                 )     **JUDGMENT ON STIPULATED**
                                   )     **RECORD**
TOWN OF BAR HARBOR,                )
                                   )
        Defendant.                 )

This case was presented to the Court for decision without trial on a stipulated record and the written briefs of the parties. The Court also heard oral argument on the matter on November 7, 2018. William H. Dale, Esq. appeared for Plaintiffs and Edmond J. Bearor, Esq. appeared for Defendant.

## FACTS

This case involves a parcel of land located at 121 Eden Street in the Town of Bar Harbor, which is designated by Bar Harbor as Tax Map 231, Lot 004 (the "Ferry Terminal Property") and was re-zoned pursuant to a vote of the annual Town meeting on June 13, 2017 (the "Zoning Amendment"). (Stip. ¶ 1.) In this action, Plaintiffs[1] seek a declaratory judgment declaring that the Zoning Amendment is invalid on the grounds that it is not pursuant to, or consistent with, the Town's comprehensive plan and, furthermore, is not in accord with Maine statutes and regulations governing shoreland zoning. The Defendant, the Town of Bar Harbor (the "Town") is a municipal corporation existing under the laws of the State of Maine and located in the County of Hancock, State of Maine. (Stip. ¶ 5.)

---

[1] Plaintiffs are twenty-one individuals and one trust that own land in, or with a view of, Bar Harbor. (Stip. ¶¶ 2-4.) As discussed in more detail below, the Town argues that only those plaintiffs who own land in Bar Harbor have standing to challenge the Zoning Amendment. (Def's Br. 5-7.)

1

Over a year before the vote on the Zoning Amendment, on March 15, 2016, John Henshaw of the Maine Port Authority wrote to Robert Osborne, the Town's Planning Director, regarding the Maine Department of Transportation's planned lease with purchase option[2] for the Ferry Terminal Property. (Stip. ¶ 17.) Thereafter, the Town Planning Board took up the issue of a proposed amendment to the Town's local zoning ordinance and shoreland zoning ordinance (collectively, the Land Use Ordinance or the "LUO") at its meeting on April 6, 2016. (Stip. ¶ 18.) Between April 6, 2016 and March 7, 2017, the Planning Board, Town Council, and Mr. Osborne met and corresponded multiple times to discuss and revise the language of what would become the Zoning Amendment. (Stip. ¶¶ 18-29.) These meetings and correspondences included a site visit to the Ferry Terminal Property by the Planning Board, joint meetings of the Planning Board and Town Council, and public hearings. (Stip. ¶¶ 19, 21, 24-25, 28.) Mr. Henshaw also continued to correspond with Mr. Osborne regarding the Zoning Amendment. (Stip. ¶¶ 17, 28.)

In Bar Harbor, pursuant to the Town's charter, the exclusive legislative authority to adopt or amend the LUO is vested in the Town meeting. (Stip. ¶ 7.) The Town's charter requires electors to act on referendum questions, including amendments to the LUO, by voting on "articles," i.e. individual questions, on the "warrant," i.e. ballot, at a Town meeting. (Stip. ¶ 8.) On March 7, 2017, the Town Council voted to place various articles on the warrant, including Article 12, which asked electors at the annual Town meeting whether they were in favor of the Zoning Amendment. (Stip. ¶¶ 10, 29, 32.) At the Town meeting, electors voted to pass Article 12, and the LUO was amended consistent with the Zoning Amendment. (Stip. ¶¶ 1, 11-12, 32.) A competing measure—Article 13—was defeated. (Stip. ¶ 11.) On July 18, 2018, the Maine Department of Environmental

---

[2] The Maine Department of Transportation thereafter purchased the Ferry Terminal Property. (Stip. ¶ 34.)

Protection ("DEP") issued an order approving[3] the Zoning Amendment (the "DEP Order") but referenced deficiencies in other provisions of the LUO that had been identified in a prior DEP order issued in 2012. (Stip. ¶ 33.) Those unrelated deficiencies are not relevant here.

The intent underlying the Zoning Amendment was to allow cruise ships to use the Ferry Terminal Property. (Stip. ¶ 13.) The current practice for cruise ships visiting Bar Harbor is to anchor the ship in the harbor and bring passengers ashore using tenders, or smaller boats. (Stip. ¶ 14.) To further the Town's goal of allowing cruise ships to use the Ferry Terminal Property, the Zoning Amendment effected three changes to the LUO: (1) the creation of a new "Shoreland Maritime Activities District," which would apply to the Ferry Terminal Property; (2) the addition of definitions for "passenger terminal" and "parking deck" in the LUO at section 125-109 (Definitions); and (3) a map amendment assigning the Shoreland Maritime Activities district to the Ferry Terminal Property. (Stip. ¶ 12.)

DISCUSSION

## I. Ripeness and Standing

Before reaching the merits of this case, the Court must consider two threshold issues raised by the Town: (1) whether there is a genuine controversy ripe for judicial decision and (2) whether those plaintiffs whose properties are outside the Town lack standing to challenge the Zoning Amendment.

### 1. Ripeness

Plaintiffs' complaint brings one count against the Town, for a declaratory judgment pursuant to Maine's Declaratory Judgments Act, 14 M.R.S. §§ 5951-5963. Maine's declaratory

---

[3] Municipalities are required to adopt zoning ordinances meeting the minimum guidelines found at 06-096 C.M.R. ch. 1000 with respect to all shoreland areas, an express limitation on the Legislature's general grant of municipal home rule authority. 30-A M.R.S. § 4352; 38 M.R.S. § 438-A. The Ferry Terminal Property is within a shoreland area. 38 M.R.S. § 435. As such, amendments to the Town's shoreland zoning ordinance (like the Zoning Amendment) are subject to State oversight and require DEP approval. 38 M.R.S. § 438-A(2)-(3).

judgment act provides that "any person . . . whose rights . . . are affected by a . . . municipal ordinance . . . may have determined any question of . . . validity . . . arising under the . . . ordinance . . . ." 14 M.R.S. § 5954. The Declaratory Judgments Act "may be invoked only where there is a genuine controversy." *Patrons Oxford Mut. Ins. Co. v. Garcia*, 1998 ME 38, ¶ 4, 707 A.2d 384 (citing *Wagner v. Secretary of State*, 663 A.2d 564, 567 (Me. 1995)). "A genuine controversy exists if a case is ripe for judicial consideration and action." *Id.* (citing *id.*). Ripeness is a question of law. *Johnson v. Crane*, 2017 ME 113, ¶ 9, 163 A.3d 832. The Court considers two factors in determining whether a case is ripe for review: (1) the fitness of the issue for judicial decision and (2) the hardship to the parties of withholding court consideration. *Id.* Speculative hardships cannot satisfy this requirement. *Clark v. Hancock Cty. Comm'rs*, 2014 ME 33, ¶ 19, 87 A.3d 712 (citing *Johnson v. City of Augusta*, 2006 ME 92, P 8, 902 A.2d 855). However, "[t]he declaratory judgment law does permit anticipatory challenges to a regulation or ordinance to resolve a dispute regarding a planned action, before the matter actually proceeds and the challenged ordinance is applied to the detriment of the plaintiffs." *Sold, Inc. v. Town of Gorham*, 2005 ME 24, ¶ 14, 868 A.2d 172.

The Court concludes that in this case there is a genuine controversy ripe for judicial review. Plaintiffs seek a declaration that a municipal ordinance—the Zoning Amendment—is invalid. The issue is thus per se "fit" for judicial decision under the statute. *See* 14 M.R.S. § 5954. Furthermore, this is not a situation where the Town has since further amended its LUO with regards to the Ferry Terminal Property and Plaintiffs seek only a declaration that future actions by the Town might be inconsistent with the Town's comprehensive plan or State statutes and regulations. *Cf. Clark*, 2014 ME 33, ¶ 20, 87 A.3d 712 (identifying "hardship" as "purely speculative" where the municipal body had already rescinded the challenged votes). On the other hand, a judicial declaration of the

4

validity of the Zoning Amendment "can only aid the [Town] in making use of its lawful regulatory powers." *See Me. Pub. Serv. Co. v. Pub. Utils. Com.*, 524 A.2d 1222, 1226 (Me. 1987). In sum, the Court is satisfied that the question of the validity of the Zoning Amendment is ripe for judicial consideration. *See Johnson v. Crane*, 2017 ME 113, ¶ 9, 163 A.3d 832.

### 2. Standing

The Town next argues that those Plaintiffs whose properties are outside the Town lack standing to challenge the Zoning Amendment. All but four of the Plaintiffs own property outside of the Town in either Hancock, Maine or Sorrento, Maine, both in Hancock County. (Stip. ¶¶ 2-4.) The Town bases its argument on *Buck v. Yarmouth*, 402 A.2d 860, 861 (Me. 1979), where the Law Court held that a private citizen must generally be able to establish some sort of "particularized injury" resulting from the municipality's action or inaction in order to have standing to challenge its validity—in other words, in order for a plaintiff to have a particularized injury, the municipality's action or inaction must affect them differently than it affects the larger community as whole. *Id.* at 861-62. Absent a particularized injury, a plaintiff only has standing to challenge a municipality's action if they seek preventative—rather than remedial—relief from the municipality. *Id.* Plaintiffs respond that (1) they have proven a particularized injury on the stipulated record and (2) that the relief they seek is preventative, and not remedial, in any event. Plaintiffs identify the berthing of cruise ships at the Ferry Terminal Property as their particularized injury and a prohibition on the berthing of cruise ships at the Ferry Terminal Property as the preventative relief that they seek; or as the Plaintiffs put it at oral argument, that they "don't want this ordinance to be allowed to go forward."

The problem with both of Plaintiffs' arguments is that they conflate the actual issue before the Court with what Plaintiffs characterize as the "practical matter" before the Court; i.e.,

5

Plaintiffs' "challenge[] [to] the Town Council's efforts to allow a very large, land-based pier to accommodate very large cruise ships . . . ." (Pl's Br. 2.) The Court acknowledges that the impetus for Plaintiffs' lawsuit is their aversion to a retrofitting of the Ferry Terminal Property to allow it to accommodate large cruise ships, but they have grounded this "anticipatory challenge" to that result in the purported invalidity of the Zoning Amendment. *See Sold, Inc.*, 2005 ME 24, ¶ 14, 868 A.2d 172. In other words, in this lawsuit, Plaintiffs ask this Court to declare the Zoning Amendment invalid: Plaintiffs do not ask the Court to enjoin any imminent future action of the Town. *See Buck*, 402 A.2d at 862. In this context, Plaintiffs' only injury, if any, can be the injury of living in a town that has enacted an unlawful ordinance. The Town implicitly concedes that this a sufficient injury to confer standing on the four Plaintiffs who own property in Bar Harbor under *Buck*, although it is not clear on the Stipulated Record how they have suffered "special injury different from that incurred by any other voter," or even whether they are eligible to vote at the Town meeting. *Id.* at 861. (Def's Br. 5.)

The Court thus concludes that only those four Plaintiffs who own property in the Town of Bar Harbor and are listed in Paragraph Two of the Stipulated Record have standing to challenge the Zoning Amendment. The other Plaintiffs, the seventeen individuals listed in Paragraph Three and Paragraph Four of the Stipulated Record, lack standing and are dismissed from this lawsuit.

II.     Merits

As noted above, the Zoning Amendment created a new "Shoreland Maritime Activities District" and assigned the Ferry Terminal Property in the new district. (Stip. ¶ 12.) In particular, the Zoning Amendment added section 125-49.3 to the LUO. (Jt. Ex. 2.) LUO § 125-49.3 explains the purpose for the creation of the Shoreland Maritime Activities District, identifies the uses and

6

activities allowed in the District, and describes the required permitting process for allowed uses. (*Id.*)

Plaintiffs first claim that the Zoning Amendment is inconsistent with the Town's comprehensive plan. *See* 30-A M.R.S. § 4352(2) ("A zoning ordinance must be pursuant to and consistent with a comprehensive plan adopted by the municipal legislative body," subject to an exception not relevant here). However, at the oral argument, Plaintiffs all but abandoned this argument, acknowledging that the standard of review for such a challenge presents a high hurdle for Plaintiffs to overcome. *See Friends of the Motherhouse v. City of Portland*, 2016 ME 178, ¶ 12, 152 A.3d 159 (stating that plaintiffs have the "burden to prove that the [municipality's] action rezoning . . . property [is] not 'in basic harmony with the comprehensive plan.'") (quoting *Remmel v. City of Portland*, 2014 ME 114, ¶ 13, 102 A.3d 1168); *see also Remmel*, 2014 ME 114, ¶ 12, 102 A.3d 1168 ("'zoning is a legislative act' and [courts] must give deference to the legislative body") (quoting *Golder v. City of Saco*, 2012 ME 76, ¶ 9, 45 A.3d 697). Given Plaintiffs' acknowledgement at the oral argument, the Court addresses the issue only briefly. *Cf. State v. Oken*, 569 A.2d 1218, 1218 (Me. 1990) (courts do not consider issues argued in the briefs but abandoned at oral argument). It is sufficient to state that the Court has reviewed the Town's comprehensive plan,[4] including those provisions of the Town's comprehensive plan identified by Plaintiffs and the countervailing provisions identified by the Town, and is satisfied that there is nothing in the Zoning Amendment itself that is not in "basic harmony with the comprehensive plan" as that standard has been defined by the Law Court. (Jt. Ex. 6.) *See, e.g., Friends of the Motherhouse*, 2016 ME 178, ¶ 12, 152 A.3d 159; *Remmel*, 2014 ME 114, ¶ 26, 102 A.3d 1168; *Golder*, 2012 ME 76, ¶ 15, 45 A.3d 697.

---

[4] Jt. Ex. 6.

7

Plaintiffs next argue that LUO § 125-49.3 is inconsistent with Maine's shoreland zoning statute, 38 M.R.S §§ 435-449, and associated DEP regulations found at 06-096 C.M.R. ch. 1000. Plaintiffs identify purported inconsistencies between LUO § 125-49.3 and two provisions of 06-096 C.M.R. ch. 1000: (1) 06-096 C.M.R. ch. 1000, § 13(F) and the "note" associated with that subsection and (2) the land uses listed in Table 1 of 06-096 C.M.R. ch. 1000, § 14 ("Land uses in the shoreland zone").[5]

The Court is not the first body to consider these issues. As noted above, the DEP issued an order approving the Zoning Amendment—in other words, DEP was not persuaded that LUO § 125-49.3 violated or was otherwise inconsistent with any State shoreland zoning statute or DEP regulation, including 06-096 C.M.R. ch. 1000. *See* 38 M.R.S. § 438-A(2),(3). (Stip. ¶ 33.) At the oral argument, Plaintiffs confirmed that they did not challenge or appeal the DEP Order pursuant to M.R. Civ. P. 80C. Nonetheless, in order to prevail in this action, as a practical matter, Plaintiffs must convince the Court that DEP reached the wrong result when it approved the Zoning Amendment. In their written memoranda, the parties do not meaningfully address what level of deference the Court should afford the DEP Order, and it was discussed only briefly at the oral argument. Plaintiffs argue that "no judge or likely any attorney has said the Article 12 provisions are lawful—only a DEP staff person who apparently was not that familiar with the law[,]" implying that the order warrants little deference, but citing no authority for that position. The Town's brief merely mentions in passing that the DEP has approved the Zoning Amendment, a point it reiterated

---

[5] Plaintiffs also raise an issue unrelated to State shoreland zoning law, *viz.* that the Zoning Amendment uses "undefined terms." (Pl's Br. 10.) In their reply brief, for the first time Plaintiffs suggest that the Zoning Amendment should be invalidated because these terms are too vague to be enforceable. (Pl's Reply 10 n. 11.) The issue is outside the scope of the issues as identified by the Plaintiffs themselves in this lawsuit, as Plaintiffs do not identify how the use of the purportedly undefined terms conflicts with any provision of the State shoreland zoning statute or DEP guidelines. (Pl's Br. 2,7.)

at the oral argument, but takes no position on what level of deference the Court should afford the DEP Order.

Assuming Plaintiffs had standing to appeal from the DEP Order to a Maine superior court under M.R. Civ. P. 80C and 5 M.R.S.A. §§ 11007(2)-(4), the agency's decision therein would be reviewed for "for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record" and would enjoy "[c]onsiderable deference" with respect to its "interpretation of its own rules [and] regulations[;]" in other words, the court would "not second-guess the agency on matters falling within its realm of expertise." *Mulready v. Bd. of Real Estate Appraisers*, 2009 ME 135, ¶ 13, 984 A.2d 1285 (citations and quotations omitted); *see FPL Energy Me. Hydro LLC v. Dep't of Envtl. Prot.*, 2007 ME 97, ¶¶ 11-14, 926 A.2d 1197. In the absence of any countervailing authority provided by the Plaintiffs the Court can discern no reason to apply stricter scrutiny in the context of this case. The Court thus concludes that the DEP Order is entitled to considerable deference. *See id.*

1. The Zoning Amendment is Not Inconsistent with 06-096 C.M.R. ch. 1000, § 13(F).

Section 125-49.3(A) of the LUO describes the Town's purpose for creating the Shoreland Maritime Activities District and zoning the Ferry Terminal Property in that new district:

A. Purpose. The Shoreland Maritime Activities District seeks to support maritime activities related to the reuse of [the Ferry Terminal Property], the ferry terminal for both cruise ship and ferry activities. This district includes all land currently occupied by or suitable for active water-dependent uses, taking into consideration:
   (1) Shelter from prevailing winds and waves;
   (2) Slope of the land within 250 feet, horizontal distance, of the shoreline;
   (3) Depth of water within 150 feet, horizontal distance, of the shoreline;
   (4) Available support facilities, including utilities and transportation facilities; and
   (5) Compatibility with adjacent upland uses.

*Id.* This is a clear attempt by the Town to create what the DEP regulations call a Commercial Fisheries/Maritime Activities ("CFMA") District, in order to develop the Ferry

9

Terminal Property with the uses and structures allowable in a CFMA district under the DEP regulations and discussed in more detail in the following section of this Order.

The CFMA District is defined by 06-096 C.M.R. ch. 1000, § 13(F) as including "areas where the existing predominant pattern of development is consistent with the allowed uses for this district as indicated in the Table of Land Uses, Section 14, and other areas which are suitable for functionally water-dependent uses[.]" The regulation goes on to list several factors to be considered in determining whether a district should be zoned as CFMA:

(1) Shelter from prevailing winds and waves;
(2) Slope of the land within 250 feet, horizontal distance, of the shoreline;
(3) Depth of water within 150 feet, horizontal distance, of the shoreline;
(4) Available support facilities including utilities and transportation facilities; and
(5) Compatibility with adjacent upland uses.

*Id.* The note to 06-096 C.M.R. ch. 1000, § 13(F) further provides that:

A municipality may opt to identify one or more CFMA Districts, each of which may be as small as a single parcel, provided that the municipality includes in this district or combination of CFMA districts, all land currently occupied by or suitable for active water dependent uses, taking into consideration the above-listed factors.

*Id.* Plaintiffs claim that this lattermost language from the note makes it clear that the rezoning of a single parcel can survive judicial review only if the municipality includes all land with such uses—otherwise, it is unlawful "spot zoning." *See City of Old Town v. Dimoulas*, 2002 ME 133, ¶ 20, 803 A.2d 1018 ("Spot zoning is not itself a pejorative term . . . . In order to constitute illegal spot zoning, the ordinance (1) must pertain to a single parcel or a limited area-ordinarily for the benefit of a particular property owner or specially interested party-and (2) must be inconsistent with the city's comprehensive plan . . . .") (quotations omitted). Plaintiffs point out that nowhere in the minutes of any meeting of Town appointed or elected boards is there any consideration of including any other adjacent (or nearby) lots or parcels of land in the new zoning district, and all consideration from the very beginning of the process has been limited solely to the Ferry Terminal

10

Property. The Town counters that in fact the Zoning Amendment recites that it includes all such land and argue that Plaintiffs have not presented any facts to the Court from which it could conclude that the Zoning Amendment does not include all such land. *See* LUO § 125-49.3(A). Furthermore, the Town points out that the preface to 06-096 C.M.R. ch. 1000 provides that the notes are not "official parts" of the guidelines and "are provided for explanatory purposes only." *Id.*

Plaintiffs have failed to carry their burden to demonstrate an inconsistency between LUO § 125-49.3(A) and 06-096 C.M.R. ch. 1000, § 13(F). First, Plaintiffs have adduced no evidence that the Town has not included in the new Shoreland Maritime Activities District all land currently occupied by or suitable for active water dependent uses taking into consideration the factors listed above. The joint exhibits identified by Plaintiff do not support the proposition that the Town did not. In Joint Exhibit Twenty, Attorney Bearor expressed an opinion that if Article 12 and the competing warrant article (Article 13) were both passed, then the creation of the Shoreland Maritimes Activities District "may very well be unlawful 'spot zoning.'" (Jt. Ex. 20 at 3.) However, Article 13 did not pass. (Stip. ¶ 11.) In Joint Exhibit Seventeen, Mr. Henshaw likewise suggests that an unidentified *draft* of Warrant Article 12 "apparently . . . create[s] a new 'spot zone'" without even commenting on its legality. (Jt. Ex. 17 at 2.) The absence of discussion of the geographic scope of the new proposed district in the public record is insufficient evidence, particularly considering that the DEP ultimately approved the Zoning Amendment. (Stip. ¶ 33.) In sum, Plaintiffs have not demonstrated that the "explanatory" guidance provided in the note to 06-096 C.M.R. ch. 1000, § 13(F) was not followed, even assuming its language is controlling on the Town. *See* 06-096 C.M.R. ch. 1000 (preface).[6]

---

[6] Furthermore, Plaintiffs cite no evidence that would satisfy either prong of the test for illegal spot zoning as laid out in *City of Old Town v. Dimoulas*, 2002 ME 133, ¶ 20, 803 A.2d 1018.

11

2. The Zoning Amendment is Not Inconsistent with 06-096 C.M.R. ch. 1000, § 14.

Section 125-49.3(C) of the LUO identifies the allowed uses and structures in the newly-created and zoned Shoreland Maritime Activities District, and describes the required permitting process for those uses:

C. Allowed uses.
(1) Principal uses allowed by building permit or a change of use permit from the Code Enforcement Officer: a government facility and grounds, and temporary pier, dock, wharf, breakwater or other use projecting into the water.
(2) Accessory uses that are usual and normal to a principal use are allowed if they are typically permitted by the Code Enforcement Officer or site plan review for the district in which the use is proposed. Accessory uses are allowed by review of the same permitting authority that approved the principal structure and shall include bank; farmers market; hotel; multifamily dwelling I; multifamily dwelling II; parking deck; parking lot; professional office building; restaurant; retail; take-out restaurant and wireless telecommunications facility.

*Id.* 06-096 C.M.R. ch. 1000, § 14 consists of a table, "Table 1," which identifies what uses and structures are allowed and not allowed in a CFMA District, and the required permitting process, if any, for the allowed uses and structures. Table 1 differentiates between "Principal structures and uses" and "Structures accessory to allowed uses." 06-096 C.M.R. ch. 1000, § 14, Table 1 at lines 15-16. Principal structures and uses are, at a minimum, subject to Planning Board approval and must be "[F]unctionally water dependent uses [or] uses accessory to such water dependent uses . . . ." 06-096 C.M.R. ch. 1000, § 14, Table 1 at lines 15(A)-(F), n. 5. The CFMA District does not allow one- and two-family residential or multi-unit residential structures or uses as a "principal" structure or use. *Id.* at lines 15(A)-(B). "Structures accessory to allowed uses" are always allowed in a CFMA District and do not require Planning Board approval or satisfaction of the functionally water-dependent condition. *Id.* at line 16. The determination of whether a structure is "principal" or "accessory" is left in the first instance to the municipality, subject to approval by the DEP. *See* first "note" to 06-096 C.M.R. ch. 1000, § 14; 38 M.R.S. § 438-A(2),(3).

12

Plaintiffs argue that some of the "accessory uses"[7] contemplated by LUO § 125-49.3(c)(2) are expressly disallowed by 06-096 C.M.R. ch. 1000, § 14, Table 1 at line 15, even with municipal approval—in particular, residential uses and non-functionally water-dependent commercial uses such as a bank, farmers market, office building, *etc. See id.* at lines 15(A)-(C). However, this conflates the two categories of uses and structures contemplated by Table 1: "principal" and "accessory." *Id.* at lines 15-16. "Multi-unit residential" uses are indeed listed as prohibited, and commercial uses subject to Planning Board approval and the "functionally water-dependent" condition—but *only if* they are "*Principal* structures and uses." *See* 06-096 C.M.R. ch. 1000, § 14, Table 1 at lines 15(A)-(C) (emphasis added). "Structures accessory to allowed uses"[8] are allowed even in the absence of municipal approval and are not subject to the functionally water-dependent condition. *See* 06-096 C.M.R. ch. 1000, § 14, Table 1 at line 16. Here, the Town expressly provided that the residential and commercial uses are "accessory uses" in the Zoning Amendment. LUO § 125-49.3(c)(2). DEP was satisfied that these structures and uses are allowable as accessory to the principal structures and uses, and the Court declines to second-guess that determination, which is well within DEP's expertise and discretion. *See Mulready*, 2009 ME 135, ¶ 13, 984 A.2d 1285.

In sum, the Court concludes that the Zoning Amendment is not inconsistent with State shoreland zoning law and declines to declare it invalid on that basis in this case.

---

[7] In their reply brief and at the oral argument, Plaintiffs also raised the argument that one of the "principal uses" of the Ferry Terminal Property contemplated by section 125-49.3(c)(1) of the Zoning Amendment—"government facility and grounds"—is disallowed by 06-096 C.M.R. ch. 1000, § 14, Table 1, at line 15(E), because it is not "functionally water-dependent" and the government facility contemplated by the Zoning Amendment—a passenger ferry terminal— is inconsistent with the definition of "government facility/use" found in section 125-109 of the LUO. (Pl's Reply 9-10.) However, this argument was not raised in their initial brief or anticipated by the Town in its opposing memorandum. *See* M.R. Civ. P. 7(e). In any event, the Court is satisfied that the passenger ferry terminal contemplated by the Zoning Amendment is indeed "functionally water-dependent" and consistent with the definition of "government facility/ use" found at LUO § 125-109.

[8] "Allowed uses" being those principal structures and uses listed at lines 15(C)-(F), such as, in this case, functionally water-dependent "[g]overnment and institutional" structures and uses. 06-096 C.M.R. ch. 1000, § 14, Table 1 at line 15(E).

13

## CONCLUSION

Based on the foregoing it is hereby ordered:

That judgment be entered for the Defendant Town of Bar Harbor on the Plaintiffs'
Second Amended Complaint.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by
reference. M.R. Civ. P. 79(a).

Dated: 12/18/18

_____
M. Michaela Murphy
Justice, Business and Consumer Court

Entered on the Docket: 12/18/18
Copies sent via Mail___Electronically ✓

14