STATE OF MAINE                                    SUPERIOR COURT
LINCOLN, ss.                                      CIVIL ACTION
                                                  DOCKET NO. AP-20-4

AQUAFORTIS ASSOCIATES, LLC,        )
                                   )
            Petitioner,            )
                                   )
      v.                           )      **80C DECISION AND ORDER**
                                   )
MAINE BOARD OF                     )
ENVIRONMENTAL PROTECTION,          )
                                   )
            Respondent             )
                                   )
      and                          )
                                   )
CLARY LAKE ASSOCIATION,            )
                                   )
            Party-in-Interest      )

## INTRODUCTION

This matter before the court is an appeal by Aquafortis Associates, LLC, Petitioner, from a Department of Environmental Protection transfer order #L-22585-36-F-T, which transferred a Water Level Order to the Clary Lake Association. This appeal has been brought pursuant to 5 M.R.S. §§ 11001-11008 and M.R. Civ. P. 80C. Oral argument was conducted on the pending motions remotely on September 8, 2020.

## BACKGROUND

This dispute concerns a dam on Clary Lake, an artificially impounded body of water in Lincoln County. (Pet'r's Br. 1.) The Petitioner, Aquafortis Associates, LLC ("AQF"), owns a downstream mill complex and other property that abuts the Clary Lake Dam. (Pet'r's Br. 1-2.) AQF's mill complex is listed on the National Register of Historic Places. (Pet'r's Br. 1.)

In 2012, the Maine Department of Environmental Protection ("DEP") received a petition for a Water Level Order ("WLO") for Clary Lake. (Resp't's Br. 2.) After conducting a water level hearing, DEP issued a WLO for Clary Lake to Pleasant Pond

1

Mill, LLC ("PPM"), the owner of the dam at that time. (Resp't's Br. 2-3.) PPM filed an appeal pursuant to M.R. Civ. P. Rule 80C, which was denied by the Superior Court in February 2018. (Resp't's Br. 3.) No further appeal was taken. *Id.* The Petitioner in this action was a party to the earlier appeal.

PPM and its manager and sole member, Paul Kelley, filed for bankruptcy in 2017. (Pet'r's Br. 2.) In September 2018, the U.S. Bankruptcy Court issued a sale order approving a sale of the dam to Clary Lake Association ("CLA"). *Id.* The bankruptcy trustee subsequently conveyed property to CLA by quitclaim deed recorded in the Lincoln County Registry of Deeds. (Resp't's Br. 3.) This deed conveys "all right, title, and interest in and to the entirety of the dam located on the Premises, all without covenant (the <u>Dam Site</u>), all mill privilege and flowage rights related to the aforementioned Dam Site and / or the Premises, any improvements, buildings, structures, fixtures . . . and any other assets forming a part of or necessary or convenient for the use, operation, and / or maintenance of the Dam Site." (Resp't's Br. 3.)

After this property transfer, in October 2018, CLA submitted a transfer application to the DEP seeking a transfer of the WLO to CLA. (Pet'r's Br. 3.) AQF requested that DEP hold a public hearing on this proposed transfer in November 2018. (Pet'r's Br. 3.) DEP denied the request for a hearing, stating that AQF's request did not contain credible conflicting technical and other information. (Resp't's Br. 4.) DEP approved the transfer order on December 6, 2018. *Id.*

AQF timely appealed the transfer to the Maine Board of Environmental Protection ("BEP"). AQF alleged (1) that it was uncertain whether WLOs could be transferred like a license; (2) that the criteria for a license transfer under this specific factual scenario were unknown or undisclosed for various reasons; and (3) that CLA should have submitted more detailed documents, including "engineered drawings of its anticipated repair and

2

change of dam configuration" and a "water level management plan." (AR Doc. 2, 007-009.) CLA submitted a one-page response to AQF's appeal, primarily arguing that AQF failed to allege anything pertaining to the transfer of the WLO. (AR Doc. 35, 187.) AQF attempted to submit an additional objection and comment in reply that contained new exhibits. (Resp't's Br. 6.) The BEP excluded this new petition on January 30, 2019, finding that the rules did not allow for such a comment and that supplemental evidence was untimely. *Id.* The BEP denied AQF's appeal by order dated June 6, 2019.

AQF is now before this court challenging the final decision of the BEP to approve the transfer of the WLO to CLA, pursuant to M.R. Civ. P. 80C. AQF claims that the BEP decision was made "upon unlawful procedure, affected by errors of law, insufficiently supported by credible evidence, was arbitrary and capricious, and constitutes an abuse of discretion." (Pet'r's Br. 6.) AQF also claims that the BEP's decision violated its due process rights under the United States Constitution, the Maine Constitution and DEP regulations. *Id.*

## STANDARD OF REVIEW

An agency determination can be modified or reversed only if the determination is:

1) in violation of constitutional or statutory provisions; 2) in excess of the statutory authority of the agency; 3) made upon unlawful procedure; 4) affected by bias or error of law; 5) unsupported by substantial evidence on the whole record; or 6) arbitrary or capricious or characterized by abuse of discretion.

5 M.R.S. § 11007 (2019). "The party attempting to vacate the agency's decision bears the burden of persuasion." *Forest Ecology Network v. Land Use Regulation Comm'n*, 2012 ME 36, ¶ 28, 39 A.3d 74.

The court directly reviews an agency decision "for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Merrill v. Me. Pub. Emples. Ret. Sys.*, 2014 ME 100, ¶ 13, 98 A.3d 211 (quotation omitted). The court

3

acting in an appellate capacity will not vacate an agency's factual findings unless they are clearly erroneous. *Suzman v. Comm'r, Dep't of Health & Human Servs.*, 2005 ME 80, ¶ 24, 876 A.2d 29. The court will sustain the administrative decision if, "on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Seider v. Bd. of Examiners of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551. "Inconsistent evidence will not render an agency decision unsupported." *Id.*

The court reviews an agency's interpretation of its statute by looking to the plain language of the statute. *Bankers Life & Cas. Co. v. Superintendent of Ins.*, 2013 ME 7, ¶ 15, 60 A.3d 1272. When the statute is ambiguous, the court will review "whether the agency's construction is reasonable." *FPL Energy Me. Hydro LLC v. Dep't of Envtl. Prot.*, 2007 ME 97, ¶ 11, 926 A.2d 1197 (quotation omitted).

## DISCUSSION

AQF raises four arguments in support of its appeal. First, AQF claims that the DEP decision to exclude their reply to CLA's response constituted an abuse of discretion. (Pet'r's Br. 6-7.) Second, AQF claims that the BEP erred in finding that CLA's application satisfied the technical and financial capacity criteria necessary for a transfer of the WLO. (Pet'r's Br. 7-9.) Third, AQF argues that DEP was required to hold a public hearing. (Pet'r's Br. 9-10.) Fourth and finally, AQF claims that the BEP erred in finding that CLA demonstrated adequate right, title and interest to justify transfer of the WLO. (Pet'r's Br. 11-14.)

The BEP argues that all of AQF's arguments should fail because the WLO already applies to CLA as a matter of Maine law, rendering any procedural deficiencies in the transfer process mere harmless error. (Resp't's Br. 10-11.) Additionally, the BEP argues that AQF waived all arguments regarding transfer criteria by failing to raise them before

4

DEP. (Resp't's Br. 12-15.) To the extent that the court will consider AQF's arguments, the BEP contends that those arguments are without merit. (Resp't's Br. 15-27.)

The BEP argued during oral arguments that because CLA is obligated under the WLO either way, AQF can change nothing by this lawsuit. Either it has not been injured or it cannot obtain relief for that injury. Thus, the BEP argues AQF has no standing to bring this appeal. While the court remains perplexed as to what AQF believes could be accomplished by this appeal, the court assumes without holding that AQF has standing because this case can be adequately decided on other grounds.

## 1. Harmless Error

As a threshold matter, the BEP argues that the WLO already applies to CLA by operation of 38 M.R.S. § 841(1). (Resp't's Br. 10.) Therefore, AQF has not been harmed by the transfer of the WLO to CLA. 38 M.R.S. § 841(1) states:

> **Prohibition.** After issuance of an order under section 840, subsection 5, establishing a water level regime for any body of water, no owner, lessee or person in control of any dam impounding the body of water, nor any subsequent transferee, may operate or maintain the dam or cause or permit the dam to be operated or maintained in any manner that will cause the level of water to be higher or lower than that permitted by the order of the board or commissioner or to otherwise violate the terms of the order of the board or commissioner.

(2019). The BEP interprets this statute to mean that the WLO applies to CLA "separately and independently," presumably as a subsequent owner of the dam. (Resp't's Br. 11.) Thus, they argue, CLA is subject to the WLO regardless of any transfer order, rendering any allegations errors harmless, obviating any need for further analysis by the court.

The BEP cites no authority applying a harmless error standard to a Rule 80C appeal. While the law court has referenced the harmless error principle on appeal of final agency actions, it has never used it to uphold an agency action because the relationship between the parties would be unaffected by the error due to a separate and independent legal obligation. The cases where the phrase is invoked concern *de minimis* failures to

5

meet technical requirements or factual findings that are partially based on an erroneous finding but are adequately supported by other evidence in the record. *Antler's Inn & Rest., LLC v. Dep't of Pub. Safety*, 2012 ME 143, ¶ 12, 60 A.3d 1248 (notice that failed to fully comply with every statutory provision was harmless error); *Mulready v. Bd. Of Real Estate Appraisers*, 2009 ME 135, ¶ 20, 984 A.2d 1285 (error on an issue harmless where conclusion was adequately supported by other evidence and not identified as basis for decision). The BEP's argument is different, claiming that because other law would leave the parties in the same positions as they would be in if this transfer order was properly executed, any procedural defects must be harmless error.

It seems that the source of the harmless error principle is M.R. Civ. P. 61. *See, e.g., Tolliver v. DOT*, 2008 ME 83, ¶ 39, 948 A.2d 1223. The rule states:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

M.R. Civ. P. 61. The plain language of the rule states that it applies to appeals of court orders, not agency orders. This court declines to engage in a harmless error analysis here.

## 2. Waiver of Transfer Criteria Arguments

The BEP also argues that AQF failed to raise any arguments concerning transfer criteria before the agency and has therefore waived them on appeal. (Resp't's Br. 12.) AQF responds by arguing that it did raise these issues by referencing its Corrective Deed and arguing that CLA should have submitted engineered drawings of anticipated repairs. (Pet'r's Reply Br. 4-5.)

"Issues not raised at the administrative level are deemed unpreserved for appellate review. This rule applies even to unpreserved issues implicating constitutional

questions." *Carrier v. Sec'y of State*, 2012 ME 142, ¶ 18, 60 A.3d 1241 (quotation omitted). As noted above, AQF argued that the transfer criteria for a license transfer in these circumstances was unknown in its appeal to the BEP. (AR Doc. 2, 007-009.) Now they wish to argue that the BEP had insufficient evidence to conclude that the transfer criteria, namely the right, title and interest and technical and financial capacity criteria, were met. These are fundamentally different claims, so these issues were not preserved for appeal.

3. Refusal to consider AQF's reply comments

AQF argues that the BEP should have allowed it to file a reply to CLA's response. (Pet'r's Br. 6.) DEP rules allow a licensee respondent to reply to an appeal and only authorizes the appellant to reply in turn when the respondent offers supplemental evidence in their reply. 06-096 C.M.R. ch. 2, § 24(C).

CLA did not submit supplemental evidence in its response. AQF acknowledges this in its brief. (Pet'r's Br. 7.) Nevertheless, AQF argues that because CLA referred to the deed granting title to the property, AQF should be entitled to submit reply comments concerning that deed to clarify the rights actually conveyed.

There is no basis for this argument. The plain language of the rules is clear and uncontested. CLA did not submit supplemental evidence so AQF was not entitled to reply under the applicable rules.

4. Failure to hold hearing on AQF's appeal

The crux of AQF's argument that was preserved for appeal concerns DEP's decision not to hold a public hearing on the transfer order. AQF argues that while hearings are ordinarily discretionary, they are mandatory if there is conflicting technical information and a hearing will aid the DEP in understanding the evidence. (Pet'r's Br. 9-10.) AQF alleges that it had presented conflicting technical information, so the DEP's failure to hold a hearing was in error.

7

The relevant rule states:

> Criteria for Holding Hearings. Hearings are discretionary unless otherwise provided by law. The Commissioner may conduct a hearing on any application. The Board may conduct a hearing on any application over which it has assumed jurisdiction or on any appeal of a Commissioner license decision. The Department will hold a hearing in those instances where the Department determines there is credible conflicting technical information regarding a licensing criterion and it is likely that a hearing will assist the Department in understanding the evidence. When the Board assumes jurisdiction over an application, it will hold a hearing unless it votes otherwise at the time it assumes jurisdiction.

06-096 C.M.R., ch. 2, § 7(B). AQF apparently reads this rule to mean that a court may overturn a final agency action if the court finds that there is credible conflicting technical information and a hearing would aid DEP. This is a misreading of the rule. The rule clearly states that DEP will hold a hearing when the *Department* makes such a determination.

"No principle of appellate review is better established than the principle that credibility determinations are left to the trier of fact." *Dyer v. Superintendent of Ins.*, 2013 ME 61, ¶ 12, 69 A.3d 416. The court will not overturn the agency's factual findings unless they are clearly erroneous. *Suzman*, 2005 ME 80, ¶ 24, 876 A.2d 29. Here, the agency was well within its discretion to find that the various allegations made by AQF and others did not constitute credible conflicting technical information.

The agency did not abuse its discretion in refusing to hold a public hearing, so AQF's argument fails.

5. Due Process

AQF also appeals the agency decision on due process grounds. AQF's initial brief fails to mention this claim entirely. When they finally reach the issue in their reply brief, they cite several cases where the law court found that an appellant's due process rights

8

had not been violated and seeks to distinguish them.[1] (Pet'r's Reply Br. 14-15.) It does not cite to any law that would support finding a due process violation here. *Id.*

AQF's due process argument rests on the assertion that DEP deliberately construed its own rules with an intent to sabotage their procedural rights. However, the only evidence it offers to support this is that AQF had information which supposedly established a credible conflict with respect to the transfer criteria. (Pet'r's Reply Br. 15.) As noted above, the BEP's actions were supported by the plain language of the rules. AQF does not challenge the constitutionality of the rules themselves.

In light of the lack of fact or law supporting this due process claim, the argument fails.

## CONCLUSION

For the foregoing reasons, the transfer order #L-22585-36-F-T issued by the Maine Department of Environmental Protection dated December 6, 2018 regarding the Water Level Order for Clary Lake Dam is AFFIRMED and AQF's Rule 80C appeal is DENIED.

The clerk is directed to incorporate this Order by reference in the docket in accordance with M.R. Civ. P. 79(a).

DATED: September 28, 2020

Daniel I. Billings
Justice, Maine Superior Court

---

[1] AQF also cites *Matthews v. Eldridge*, but offers no explanation of how it is relevant here. 424 US 319 (1976). *Matthews* concerns the process that one is due before they can be deprived of a property interest. *Id.* at 333. AQF has not even alleged that they have been deprived of a property interest.

9